Henry V. B. Smith, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 5505. Promulgated June 27, 1945.

*Russell W. Jackson, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

OPINION.

SMITH, *Judge*: The respondent determined a deficiency in petitioner's income tax for 1941 in the amount of $1,458.41. The petitioner alleges that the respondent erred in his determination by disallowing the deduction of $9,722.71 claimed to represent a loss sustained by him on the liquidation of his interest in a joint account which had been operated by him and his mother and his two sisters.

The facts have been stipulated.

The petitioner is a resident of New Canaan, Connecticut. He filed his income tax return for the year 1941 with the collector of internal revenue for the third district of New York.

On March 22, 1929, Frank Morse Smith died, leaving a substantial personal estate, and on or about March 2, 1933, securities and cash having a total cost basis of $452,518.70 were distributed by the executors of the estate to a joint account in the name of the petitioner for the equal benefit of the petitioner, his mother, Sarah L. Smith, and his sisters, Matilda S. Lyons and Arietta H. Smith. The petitioner alone operated and managed the joint account, collected the dividends and interest on the securities, and sold securities from time to time.

The petitioner's cost basis for his share of the assets transferred to the joint account on March 2, 1933, was $113,129.67. Petitioner's share of the net gains on the sale of securities in the joint account between March 2, 1933, and January 17, 1941, was $1,095.28, and his share of the dividends and interest received during the same period, after deducting expenses, amounted to $22,628.72. On May 4, 1937, petitioner contributed cash to the joint account in the amount of $6,938.40. Prior to 1941 petitioner received cash distributions from the joint account in the total amount of $77,013.63.

In January 1941 petitioner withdrew from the joint account and there was paid to him at that time from the joint account in cash the amount of $57,066.73 representing the then value of his share of the assets contained in the joint account. Thereupon petitioner ceased to have any interest in the joint account; but the joint account was not liquidated and its operations have continued under the supervision and management of the petitioner. At the time of petitioner's withdrawal therefrom the other interests in the joint account were still owned by his mother and two sisters.

Petitioner filed a timely income tax return for the calendar year 1941, indicating thereon a tax due in the amount of $228,776.03, which tax was paid in due course, and on the return the petitioner claimed the deduction from gross income of $9,722.71 claimed to represent the excess of petitioner's cost basis of his interest in the joint account

over the amount of the total distributions received by him from the joint account. The deduction claimed should have been in the amount of $9,711.71. The respondent has disallowed this claimed deduction.

On January 7, 1944, pursuant to a waiver of restrictions executed by the petitioner, an additional income tax in the amount of $5,833.63 was assessed against the petitioner in respect of his income tax liability for the calendar year 1941, which tax, together with interest thereon in the amount of $634.58, was paid by the petitioner on January 19, 1944.

In the deficiency notice sent to the petitioner, upon the basis of which this proceeding is brought, it was stated:

The deduction of $9,722.71 claimed by you as representing the loss sustained upon the liquidation of your interest in a joint venture is disallowed in view of the provisions of Section 24 (b) (1) (A) of the Internal Revenue Code.

Section 24 of the Internal Revenue Code provides in part as follows:

SEC. 24. ITEMS NOT DEDUCTIBLE.

* * * * * * *

(b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

(1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

(A) Between members of a family, as defined in paragraph (2) (D):

* * * * * * *

(2) STOCK OWNERSHIP, FAMILY, AND PARTNERSHIP RULE.—For the purposes of determining, in applying paragraph (1), the ownership of stock—

* * * * * * *

(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * *

Section 3797 (a) (2) of the Internal Revenue Code provides that the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization.

The parties are in agreement that the pooling of the interests of the heirs of the petitioner's father for the purpose of engaging in the business of buying and selling securities constituted a joint venture and amounted to a partnership within the statutory definition of that term.

It is the contention of the respondent that the transaction by which petitioner received $57,066.73 upon his withdrawal from the joint account was tantamount to a sale or exchange by him of his interest in the joint account to his mother and two sisters and that the deduction of any loss resulting from such sale is prohibited by section 24 (b) (1) (A).

In his income tax return for 1941 petitioner claimed the deduction of a loss of $9,722.71 as a result of his withdrawal of his interest in the

joint account operated by him on behalf of himself, his mother, and his two sisters. He now claims that the correct amount of his loss is $9,711.71, computed as follows:

| | | |
|---|---:|---:|
| Original investment | | $113,129.67 |
| Subsequent cash investment | | 6,938.40 |
| Interest and dividends on his one-fourth share | | 22,628.72 |
| Gain from sales on his one-fourth share | | 1,095.28 |
| Total | | 143,792.07 |
| Cash distributions | $77,013.63 | |
| Cash on withdrawal | 57,066.73 | 134,080.36 |
| Loss | | 9,711.71 |

The claimed loss apparently results from a shrinkage in the value of the securities in the joint account from the date of acquisition to the date of petitioner's withdrawal.

If the joint account had been terminated by a distribution to each of the joint venturers of the assets in kind, none of them would have sustained a deductible loss for income tax purposes. Instead, each would have taken his share of the assets at the basis which those assets had in the joint account. *Annie Laurie Crawford et al., Executors,* 39 B. T. A. 521. Likewise if all of the assets in the joint account had been reduced to cash before the petitioner's withdrawal, the petitioner would have been entitled to the deduction of his loss not by reason of the receipt of one-fourth of the cash received by him, but by virtue of his right to claim one-fourth of the loss sustained by the joint account upon its sale of securities.

At the date of the petitioner's withdrawal from the joint account the petitioner was entitled to receive one-fourth of the cash and one-fourth of the securities owned by the joint account. If such a distribution had been made the petitioner would not have sustained a deductible loss. The determination of the loss would have had to await his sale of the securities received. But such a distribution was not made. Instead, and apparently with the full acquiescence of the other joint venturers, the petitioner was permitted to receive his one-fourth share in cash. Although it may be said that the receipt of one-fourth of the cash in the joint account did not result from the sale of any interest by the petitioner, we think that the receipt by him of cash in excess of such one-fourth of the cash resulted from a sale by the petitioner to his mother and two sisters of his one-fourth interest in such depreciated securities, that the claimed loss resulted from such sale, and that, since the sale was made to petitioner's mother and sisters, it is not a legal deduction from gross income under section 24 (b) (1) (A). This view is supported by the principle involved in *George R. McClellan,* 42 B. T. A. 124; affd. (C. C. A., 2d Cir.), 117 Fed. (2d) 988. In

that case the taxpayer withdrew from a partnership, which held certain stock exchange seats and real estate, under an agreement whereby the partnership paid him a certain amount of cash, after charging his account with a shrinkage in value of the seats and the real estate. It was held that the transaction constituted a sale by the retiring partner to the other partners of his interest in the assets of the partnership; that the assets sold were capital assets; and that the loss on such sale was a capital loss rather than an ordinary loss. In affirming our decision, the Circuit Court of Appeals said:

* * * The articles of partnership provided that upon the death or withdrawal of a partner the stock exchange seats and real estate owned by the partnership should be revalued as of the end of the year. Such revaluation resulted in a loss in the amount claimed by the petitioners in their joint return. The effect of the retiring partner's withdrawal was to transfer to the other partners for continuance in the business his interest in the stock exchange seat and real estate. The Board correctly held that the transaction amounted to a sale of a capital asset to the remaining partners. This accords with the dictum in *Bull* v. *United States*, 295 U. S. 247 * * *, and with the decisions in *Munson* v. *Commissioner*, 2 Cir., 100 F. 2nd 363 and *Stilgenbaur* v. *United States*, 9 Cir., 115 F. 2nd 283. *Helvering* v. *Smith*, 2 Cir., 90 F. 2nd 590, is not to the contrary. There the payments to the retiring partner represented only his share in past earnings and not as here, his interest in the partnership assets.

We think that that case is controlling here. The stipulated facts offer no basis for distinguishing it on the facts. Petitioner evidently realizes the force of that decision, for he states in his brief that: "Petitioner respectfully contends that the conclusion [in the *McClellan* case] that there must have been a sale of the taxpayer's partnership interest, is not warranted."

We think, as did the Circuit Court of Appeals for the Second Circuit which affirmed, that the case was correctly decided.

In *Munson* v. *Commissioner*, 100 Fed. (2d) 363, it was held that a gain which the taxpayer realized in withdrawing from a partnership under similar circumstances was a capital gain rather than an ordinary gain. See also *Dudley T. Humphrey*, 32 B. T. A. 280.

*Decision will be entered for the respondent.*