ROBERT E. FORD AND LINA Y. FORD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ALLYN K. FORD AND EMILY B. FORD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3947, 3948. Promulgated March 15, 1946.

*C. C. Goodson, Esq.*, and *E. F. Hoeschen, Esq.*, for the petitioners.
*Lester M. Ponder, Esq.*, for the respondent.

## OPINION.

LEECH, *Judge*: These consolidated proceedings involve deficiencies in income taxes for the year 1941 in the respective amounts of $1,187.78

and $1,484.73. By amended petitions filed at the hearing, petitioners in Docket No. 3947 claim overpayment of income taxes in the amount of $3,137.93 and in Docket No. 3948, in the amount of $1,901.23. The issues are: (1) Whether the cost basis of partnership assets should be adjusted upon the purchase of the interest of a withdrawing partner; and (2) whether petitioners are entitled to deduct in 1941 a loss with respect to bonds of an Italian company, under section 127 of the Internal Revenue Code. A third issue respecting petitioner Lina Y. Ford has been withdrawn on brief. The pertinent facts were stipulated and are so found.

The petitioners in each docket are husband and wife, residing in Minneapolis, Minnesota. Joint income tax returns for the taxable period involved were filed with the collector of internal revenue for the district of Minnesota.

On December 29, 1932, petitioners, together with Sara C. Ford, executed a written partnership agreement under the firm name of "The Luther Ford Investment Company." The activities of the partnership consisted primarily of purchasing, holding and selling securities. The share interests of the respective partners, as shown by the books, were as follows:

| | |
|---|---|
| Sara C. Ford | 9/27 |
| Allyn K. Ford | 6/27 |
| Robert E. Ford | 4/27 |
| Lina Y. Ford | 4/27 |
| Emily B. Ford | 4/27 |

On November 26, 1938, petitioners offered in writing to purchase, as individuals, for cash the 9/27 interest in the partnership of Sara C. Ford, for a total consideration of $134,738.69. Each was to contribute towards the purchase price an amount in proportion to his or her interest in the partnership. It was further provided that the remaining partners were to continue the business uninterrupted in the same name. On the same day Sara C. Ford duly accepted such offer. Appropriate entries to reflect the transaction were made on the partnership books. The partnership was continued in the same business under the same name without interruption. In December 1941, the partnership sold certain of its securities at a considerable loss. It also distributed in kind 720 shares of American Radiator and Standard Sanitary Co. stock pro rata to its four partners in December 1941. The shares were immediately sold on the open market, the partners calculating their loss on the original cost basis of the shares to the partnership. In determining the deficiencies; respondent allowed two-thirds of the partnership's original cost plus one-third of the market value of all such securities as of November 26, 1938, the date of the purchase of the interest in the partnership of Sara C. Ford. It is respondent's position that each partner owns an undivided interest in each separate asset of the partnership and that when

the retiring partner sells his interest to the remaining partners there is a purchase and sale of a specific asset. In support of his position reliance is placed upon the rationale of *Henry V. B. Smith*, 5 T. C. 323; *City Bank-Farmers Trust Co.* v. *United States*, 47 Fed. Supp. 98; and *George H. Thornley*, 2 T. C. 220. The respondent urges us to re-affirm our decision in the latter case, notwithstanding its reversal by the Circuit Court of Appeals for the Third Circuit, 147 Fed. (2d) 416. Those cases, however, involved the tax liability of a retiring partner. The issue here is the cost basis of capital assets of the partnership.

The courts have repeatedly recognized a partnership as a unit for computing the income tax liabilities of the individual members. *Edward B. Archbald*, 27 B. T. A. 837; affd., 70 Fed. (2d) 720; certiorari denied, 293 U. S. 594; *Alpin W. Cameron*, 20 B. T. A. 305; affd., 56 Fed. (2d) 1021; *Helvering* v. *Walbridge*, 70 Fed. (2d) 683; and *Henry W. Healy*, 18 B. T. A. 27. The respondent would have us abandon this well established concept. Unless the partnership was dissolved by the withdrawal of Sara C. Ford, respondent's theory, as we understand it, is that the partnership is not a juristic entity, even for income tax computing purposes, but is an association of individuals each of whom owns an undivided interest in each specific asset. We think such argument ignores the fact that Congress has regarded the partnership as a separate unit for computing income taxes. Thus, when a capital asset is acquired or disposed of, the gain or loss is that of the computing unit and not the individual partners. In the instant case four of the partners purchased the interest in the partnership from the other partner. The partnership, as such, engaged in no transaction affecting it as a computing unit. It continued after the withdrawal of the partner in the same business, under the same name, without interruption, as agreed. Realistically speaking, the only change that has taken place is that the remaining partners have acquired a greater interest in the profits and surplus when final liquidation occurs. After that transaction occurred, the partnership had the same identical assets as before. The partnership as a computing unit had neither disposed of any of its old assets nor acquired any new assets. Hence, there exists no logical reason for disturbing the cost basis to the partnership of specific partnership assets. The respondent suggests that the withdrawal of the partner whose interest was purchased on November 26, 1938, constituted a dissolution or termination of the partnership and the commencement of a new partnership. By the general rule of law, death or withdrawal of a partner dissolves the partnership, but it is competent for the parties to provide otherwise. As stated by Rowley in his work on Modern Law of Partnership (sec. 550):

\* \* \* Whatever in the absence of express agreement of all partners may be the technical effect of the admission of a new member or retirement of an old

member these conditions are ordinarily cared for by agreement, either under provisions in partnership articles authorizing a retirement, or arrangements made by the partners at the time of retirement. * * *

Cf. *Burwell* v. *Mandeville's Executors*, 2 How. 560, 576.

In the instant proceeding, the offer to purchase the partnership interest specifically provided for the continuation of the partnership without interruption. The partners having legally contracted for the continuation of the partnership and having actually continued it, those facts should be recognized and effect thereto given, unless prohibited by some provision of the taxing act. We are not aware of any such prohibition. Moreover, under section 27 of the Uniform Partnership Act, which has been adopted by the State of Minnesota, it is specifically provided that a transfer of a partnership interest does not of itself dissolve the partnership.[1]

The respondent has allowed two-thirds of the original cost, plus one-third of the fair market value of the securities sold as of November 26, 1938, when the retiring partner sold her interest, as the cost basis to the remaining partners. We think he erred. Since there was no dissolution or termination of the partnership in fact or by operation of law, we conclude that with respect to those securities sold by the partnership the original cost basis to the partnership of such securities is the proper cost basis for determining gain or loss to the partnership and the individual partners, petitioners herein. With respect to the 720 shares of American Radiator and Standard Sanitary stock distributed in kind to the remaining partners in the taxable year, the basis is to be determined under the last paragraph of section 113 (a) (13) of the Internal Revenue Code.[2]

The remaining issue raised by the amended petition relates to an alleged loss sustained by the partnership in the taxable year with respect to certain bonds of the Lombard Electric Co., an Italian corporation, under section 127 of the Internal Revenue Code as added by section 156 of the Revenue Act of 1942. On February 10, 1928, the partnership purchased 5 bonds of the company of the face value of $1,000 each at a cost of $4,787.50. The United States declared war on Italy on December 11, 1941. The New York Stock Exchange suspended trading in such bonds on December 12, 1941. The quotation

---

[1] Mason's Minesota Statutes, ch. 57-A, sec. 7410.

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

* * * * * * *

(13) PARTNERSHIPS.—If the property was acquired, after February 28, 1913, by a partnership and the basis is not otherwise determined under any other paragraph of this subsection, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. If the property was distributed in kind by a partnership to any partner, the basis of such property in the hands of the partner shall be such part of the basis in his hands of his partnership interest as is properly allocable to such property.

on that exchange for such bonds was 58½ for the week ended November 25, 1938, and for the week ended December 3, 1938, it was bid 58, asked 58¼. Section 127 of the code, as added by section 156 of the Revenue Act of 1942, so far as material, reads as set forth in the footnote.[3] Respondent points out that under the regulations the property deemed seized or destroyed, including property described in 127 (a) (3), must have been in existence on the date of the declaration of war.[4] He thus argues that if the underlying assets securing the bonds were seized or confiscated by the Italian Government prior to the date the United States declared war with Italy, the loss was not the result of seizure or destruction in the course of military or naval activities. From this premise respondent expresses grave doubt whether petitioners have sustained the burden of showing that the year 1941 is the proper year for allowing a deduction on account of the loss of such bonds. We think the facts as stipulated bring the petitioners clearly within the provisions of section 127 (a) (2) and Treasury regulations promulgated pursuant thereto.[5] Property in an enemy country on the date war was declared by the United States with Italy is deemed to have been destroyed or seized on such date. The respondent, it appears, has so construed section 127 and the regulations thereunder.[6] The taxpayer is not required to negative such fact. We conclude the loss is properly claimed in the taxable year 1941. The respondent further argues that, if the loss is allowed, the cost basis of this security should be likewise adjusted two-thirds to the original cost and one-third to the fair market value as of November 26, 1938. For the reasons heretofore set forth, we hold the petitioners are entitled to use the full cost of such security to the partnership. A claim of overpayment of taxes having been made, therefore,

*Decisions will be entered under Rule 50.*

---

[3] SEC. 127. WAR LOSSES.

(a) CASES IN WHICH LOSS DEEMED SUSTAINED, AND TIME DEEMED SUSTAINED.—For the purposes of this chapter—

\* \* \* \* \* \* \*

(2) PROPERTY IN ENEMY COUNTRIES.—Property within any country at war with the United States, or within an area under the control of any such country on the date war with such country was declared by the United States, shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States.

(3) INVESTMENTS REFERABLE TO DESTROYED OR SEIZED PROPERTY.—Any interest in, or with respect to, property described in paragraph (1) or (2) (including any interest represented by a security as defined in section 23 (g) (3) or section 23 (k) (3)) which becomes worthless shall be considered to have been destroyed or seized (and the loss therefrom shall be considered a loss from the destruction or seizure) on the date chosen by the taxpayer which falls between the dates specified in paragraph (1), or on the date prescribed in paragraph (2), \* \* \* when the last property (described in the applicable paragraph) to which the interest relates would be deemed destroyed or seized under the applicable paragraph. This paragraph shall apply only if the interest would have become worthless if the property had been destroyed. \* \* \*

[4] Regulations 103, sec. 19.127(a), as added by T. D. 5258, Apr. 13, 1943, C. B. 1943, p. 415.

[5] Regulations 103, sec. 19.127 (a)–2 and (a)–3, as amended by T. D. 5258, *supra.*

[6] Bureau letter dated May 3, 1943. 433 C. C. H., par. 6320.