ALLAN S. LEHMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5887. Promulgated November 5, 1946.

*Floyd F. Toomey, Esq.*, and *John P. Lipscomb, Jr., Esq.*, for the petitioner.

*Thomas H. Lewis, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: Petitioner contends that the sale by the petitioner on January 1, 1937, of a fractional share of his partnership interest in Lehman Brothers constituted a sale of a "capital asset" held for more than 10 years and only 30 per cent of the gain on the sale is to be taken into account under section 117 of the Revenue Act of 1936 [1] in computing the petitioner's net income for the calendar year 1937.

Respondent's contention is that, where a partner sells his property rights in a partnership, the holding period which determines the amount of capital gain or loss to be taken into account is fixed by the period during which the specific partnership assets were held. He urges that, in effect, the transaction was the sale of a right to a part of the appreciation in value of the firm assets, if and when it was realized; that even though no particular securities were sold, the sale of petitioner's interest enabled the petitioner to realize a part of the appreciation in the value of those assets; that the amount of $99,899.58 is the gain realized by the petitioner from the sale of his right to a part of the appreciation in value to the buying partners, of which he determined, in his deficiency notice, $81,143.24 should be taken into account as capital gains under the provisions of section 117. He maintains that this appreciation in value which the petitioner realized in 1937 arose over the period of years during which the partnership assets were held as such, and during all that period the petitioner was a coowner in partnership of those assets; that to accomplish the purpose and intent of the statute it is proper to determine the amount of his gain by reference to the holding period of the assets to which the appreciation attached. Respondent, in the alternative, contends that, assuming that petitioner sold a fractional partnership interest, the sale was made from the sale of a partnership interest which petitioner held less than one year.

The answer to the first issue herein depends upon the nature of the partnership interest sold. This interest is to be determined under the

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

100 per centum if the capital asset has been held for not more than 1 year;

80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years;

60 per centum if the capital asset has been held for more than 2 years but not for more than 5 years;

40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years;

30 per centum if the capital asset has been held for more than 10 years.

(b) DEFINITION OF CAPITAL ASSETS.—For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

laws of New York. *Blair* v. *Commissioner*, 300 U. S. 5, 9. A partnership interest is a capital asset. *Dudley T. Humphrey*, 32 B. T. A. 280. In the latter case the taxpayer was a member of a New York partnership and in 1929 he sold his interest in the partnership to his other partners. He contended that he had owned his interest in the partnership for more than two years and that his gain from the sale was capital gain and should be taxed as such. The Commissioner contested this theory and taxed the gains as ordinary income, of which 100 per cent should be taken into account. In our report in that case we stated the Commissioner's position to be as follows:

* * * Respondent's argument * * * is based on the theory that a partner's interest in the partnership consists of a joint ownership with the other partners of the partnership assets. The assets in this case consisted of securities held by the partnership primarily for sale; hence, respondent argues, they were not capital assets.

We decided against the Commissioner and upheld petitioner's contention that the sale was of "capital assets" and, among other things, said:

Now, applying the above holdings to the present case, it would appear that what petitioner sold to his partners was an intangible consisting of his right to a share in the net value of the partnership after settlement of its affairs. He had no interest in the assets of the partnership as such; consequently, what he sold was not a portion of or an interest in the partnership securities. His interest in the partnership was separate and distinct from his coownership of the partnership assets and the length of time of his ownership of the partnership interest is not measurable by the period of time that the partnership had owned the securities on hand at the time he sold his interest. He had owned his interest more than two years and in our opinion it constituted a capital asset in his hands.

To the same effect was our decision in *Morris Shapiro*, B. T. A. memorandum opinion, Jan. 20, 1940, affd., 125 Fed. (2d) 532. See also *Robert E. Ford*, 6 T. C. 499.

The Third Circuit adopted the same view as above expressed in *Thornley* v. *Commissioner*, 147 Fed. (2d) 416, reversing *George H. Thornley*, 2 T. C. 220. In pointing out in that case that the Commissioner had cited *City Bank Farmers Trust Co.* v. *United States*, 47 Fed. Supp. 98, in support of his contention, the court, among other things, said:

The Government has cited *City Bank Farmers Trust Company* v. *United States*, * * * in which the Court of Claims held that when a partner sells his interest in a partnership business the holding period for purposes of Sec. 117 (a) is to be measured not from the date of acquisition of the partnership interest, but from the date when the partnership acquired the specific partnership assets which it owned at the date of sale of the interest. That ruling is in direct conflict with the view which we expressed in *Kessler* v. *United States, supra,* and we cannot subscribe to it.

The very point we are now discussing was considered in *Kessler* v. *United States*, Dist. Ct., E. Dist. Pa., 1941; reversed on other grounds, 124 Fed. (2d) 152 (C. C. A., 3d Cir., 1941).[2]   There the District Court was considering the nature of the property rights involved in the transfer of a partnership interest.   The Court said:

The plaintiff does not contend that the partnership law supposes the firm as an independent juristic entity. That it does not was made abundantly clear by Judge Hand in *Helvering* v. *Smith*, 90 F. (2d) 590. All that the plaintiff contends is that when a partner sells his interest in the partnership, he has sold, not a fractional title to specific assets acquired by the firm, but certain rights in connection with those assets which he acquired when he entered the firm, and that these rights make up a taxable unit for determining his gain or loss; and it seems clear that the law has reached that point without recognizing the separate existence of the firm as an entity.

In view of what we have said above and the authorities we have cited, we hold that what petitioner sold on January 1, 1937, was a fractional part of his interest in the partnership of Lehman Brothers and not in the specific securities which were owned by Lehman Brothers at the time of sale, and that the period of time of holding of the interest sold is to be determined by the length of time petitioner had held the interest sold and not the time the partnership of Lehman Brothers had held the securities which it then owned.   As we have already stated, the amount of petitioner's gain from the sale is not in dispute.   The parties are agreed on that.   The question is how much of the gain is to be taken into account under section 117, and that in turn depends upon the period of petitioner's holding of the property sold.

But the determination of the first issue in petitioner's favor does not decide the case in petitioner's favor.   We must decide how long the interest which petitioner sold on January 1, 1937, had been held by him.   Merten's Law of Federal Income Taxation, vol. 3, sec. 22.27 says, among other things:

Under the present law the period of holding determines the amount to be taken into account in determining net income, and in no way affects the question whether the property qualifies as a capital asset. When it is determined whether the property falls within the definition of a "capital asset," it is necessary to ascertain the period for which the property has been held. The burden is on the taxpayer to show the length of time that he has *held* the property.

It is respondent's contention in the alternative that if this Court should hold against his main contention, that what petitioner sold was his interest in certain specific securities owned by the partnership, and should hold that what petitioner sold was his interest in the partnership as such, then the interest which petitioner sold on January 1,

---

[2] This case involved the same partnership transaction considered in *Thornley* v. *Commissioner, supra.*

1937, had been held less than one year. Respondent's contention in this respect, as we construe his argument, is based upon two grounds: (1) That the interest sold by the petitioner has not been identified and could only come from the increased interest in the profits of the firm received by the petitioner after the death of Arthur Lehman on May 16, 1936; and (2) that the partnership of Lehman Brothers at the time of the sale was a new partnership which had been in existence less than one year.

We shall deal with these two contentions separately in their order. In discussing the Commissioner's contention (1), he directs our attention to the fact that we do not have here a situation where a partner has disposed of his entire interest in the partnership and is retiring from the firm, such as we had in *Dudley T. Humphrey, supra*, and in *Morris Shapiro, supra*.

In the *Humphrey* case, Humphrey owned a one-ninth interest in the partnership of Waterman & Co., which he acquired in 1926 and sold in 1929. Between these two dates, so far as the record shows, there had been no change in the partnership interest which he owned. Under those circumstances, we held that the taxpayer was entitled to report his gain under the capital gains provisions of the statute and that the time of holding of the partnership interest was the length of time which intervened between the time he acquired it and the time he sold it.

In the *Morris Shapiro* case, the taxpayer and Joseph S. Menke in January 1926 organized a partnership under the name of Keystone Laboratories, and each owned a one-half interest. On April 24, 1934, the taxpayer sold his one-half interest to his partner, Joseph S. Menke, and Menke's wife. The record did not show any change in the taxpayer's partnership interest from the time he acquired it in 1926 to the time he sold it in 1934. Under those circumstances we held, following *Dudley T. Humphrey, supra*, that the taxpayer's gain from the sale should be taxed as a capital gain and not as ordinary income. The Sixth Circuit, in affirming our decision in the *Shapiro* case, said:

It is fundamental in applying tax statutes that matters of substance are of first importance. The price paid for the property in question may have been based partly on assets excluded under the act from the phrase "capital assets" such as inventories or property held by the partnership primarily for sale to customers in the ordinary course of its trade or business, but the sale made by respondent was not a sale of those assets. It is a well settled rule of law that the joint effects of a partnership belong to the firm and not the partners and that a partner has no individual property in any specific assets of the firm, instead the interest of each partner in the partnership property is his share in the surplus, after the partnership debts are paid and after the partnership accounts are settled. *Blodgett* v. *Silberman*, 277 U. S. 1, 10, 48 S. Ct. 410, 72 L. Ed. 749. Respondent sold all of his interest in the partnership, tangible and intangible, as a going concern, which in all essentials is different from the ordinary assets of the partnership used in the usual course of its business. * * *

There are two differences from the facts in the instant case and those which were present in the *Humphrey* and *Shapiro* cases: (1) In the instant case the facts show that from December 31, 1925, to December 31, 1936, petitioner's percentage interest in the partnership of Lehman Brothers fluctuated to a considerable extent, though at all times it greatly exceeded the partnership interest which he sold January 1, 1937; (2) petitioner did not sell his entire interest as in the *Humphrey* and *Shapiro* cases, but only a fractional part of it. The petition, in paragraph 5 (b), alleges that:

* * * The interest sold by petitioner was a 3.45% interest in the partnership. The difference between $444,899.98, what petitioner received for the 3.45% interest, and $345,000, his basis therefor, is the equivalent of 3.45% of the net appreciation in the value of the assets above their cost. Petitioner had held his partnership interest in Lehman Brothers for more than ten years.

Respondent, in his answer, denies the allegations of subparagraph (b) of paragraph 5, except it is admitted that petitioner on January 1, 1937, sold a fractional interest in the partnership known as Lehman Brothers. Respondent, although conceding that petitioner on January 1, 1937, sold a fractional part of his interest in the partnership, contends that petitioner has failed to identify the interest which he sold as one which he had held for more than 10 years or any other period in excess of one year. Respondent's argument in support of this position is summarized in his brief as follows:

The stipulation of facts shows that during the period commencing December 31, 1925, and ending January 1, 1937—more than ten years—the petitioner's interest in the business of Lehman Brothers and in the partnership conducting that business was at no time less than 13.425%; that during the period the amount of the interest fluctuated; that on January 1, 1936, the interest was 19.05%; that on July 1, 1936, after the withdrawal of the deceased partner's capital, the interest was 23.53%; that the 23.53% interest continued until the sale on January 1, 1937, after which the petitioner's interest was 20.08%.

From these stipulated facts it is apparent that the petitioner did not hold continuously for any period longer than a year any greater interest than 19.05% and that after the sale he still held an interest greater than 19.05%.

If, on January 1, 1937, the petitioner had sold his entire interest (23.53%) at least 4.48% would have been an interest held for less than one year. Why the lesser interest (3.45%) when sold should be considered to be a part of interest held more than a year rather than a part of the interest held less than one year is not apparent and the petitioner does not even attempt to identify the interest sold by stating his intention to sell one interest rather than the other. Much less does he attempt any factual identification.

In these circumstances the logical and reasonable view seems to be that the sale was made from the interest held less than one year. That interest was in fact reduced by the sale, while the interest held more than one year was not in fact reduced; the petitioner after the sale held a larger interest (20.08%) than any interest he had held continuously for more than one year (19.05%).

Petitioner's answer to the foregoing argument of respondent, we think, may be summarized by the following quotation from his brief:

The facts of this case disclose that during the ten-year period immediately prior to the sale by the petitioner of the fractional share of his partnership interest on January 1, 1937, there were certain changes in the partners of Lehman Brothers. Thus during this time two of the partners died, certain new partners were admitted to the firm and one partner withdrew entirely. New partnership agreements were executed by the partners so as to reflect the necessary shifts in the firm's capital and the interests in the profits after each contemporaneous change in personnel and the partnership capital.

The record is clear, however, that these changes in the membership of the firm had no effect on the continuation of the firm's business or on the continuing nature of the petitioner's investment or interest therein. At no time was the business of the partnership terminated or even interrupted. The firm's books and records were never closed after any of these changes. Outstanding underwriting contracts or other agreements were continued in their original form. In like manner the petitioner's investment or partnership interest remained unchanged. The partnership in fact was never liquidated nor were its assets distributed in cash or in kind to the partners.

In view of the foregoing facts which he cites in his brief, petitioner argues that since at all times after 1925 he owned an interest in Lehman Brothers of not less than 13.425 per cent and on January 1, 1937, he sold a fraction of his interest which was much less than he had at all times owned for more than 10 years, it should be held that the interest which he sold was one which he had held for more than 10 years. We think that on the facts which are detailed in our findings of fact petitioner must be sustained in this contention unless we should sustain respondent's alternative contention (2), that the partnership of Lehman Brothers at the time of the sale was a new partnership which had been in existence less than one year.

It seems manifest that it would not have been possible for petitioner to have made any better identification of the fractional interest in Lehman Brothers which he sold than he has made. The facts which are stipulated seem to cover all the relevant facts. He could not make any such identification, for example, as the owner of shares of corporate stock can make when he has purchased certain shares on different dates and at different prices. Therefore, unless respondent's second alternative contention, that an entirely new partnership came into being upon the death of Arthur Lehman in 1936 and that petitioner's interest in such new partnership dated from that date, we think we must sustain petitioner in his contention that the interest which he sold was one which he held for more than 10 years.

We shall now discuss respondent's alternative contention (2). Respondent argues that under the laws of New York [3] the death of Arthur Lehman in May 1936 dissolved the existing partnership, even though the articles of partnership provided that the business of the

---

[3] McKinney's Consolidated Laws of New York, Ann., Book 38:

"§ 62. Causes of dissolution. Dissolution is caused:

\*          \*          \*          \*          \*          \*          \*

"4. By the death of any partner; · \*   \*   \*""

partnership might be continued by the surviving partners. It is true, of course, that the death of Arthur Lehman in May 1936 did dissolve the partnership under the laws of the State of New York. It is stipulated, however, that settlement was made with the estate of Arthur Lehman as provided in the partnership agreement and that:

* * * Subsequent to the death of the said Arthur Lehman and in accordance with the provisions of Article Twenty-first of Exhibit 1-A, the remaining partners having more than 50% of the capital of the partnership determined to continue in partnership with the surviving partners and in fact continued in business under the terms and provisions of Exhibit 1-A through December 31, 1936.

Exhibit 1-A referred to above was the partnership agreement of Lehman Brothers entered into on January 1, 1936, when Edward J. Bermingham was taken in as a partner. This partnership agreement began by saying:

WHEREAS, the parties hereto, other than the party of the fourth part [Edward J. Bermingham], are partners in the partnership of Lehman Brothers; and desire to continue the partnership of Lehman Brothers and to admit the party of the fourth part to membership in said partnership;

NOW, THEREFORE, the parties hereto agree as follows: [Then follow the various provisions of the partnership agreement.]

Therefore, it seems clear to us from the foregoing that the old partnership of Lehman Brothers continued to be carried on by the surviving partners, notwithstanding the death of Arthur Lehman, and that no such new partnership came into existence as would start a new period of holding of the partnership interests of the surviving partners who continued to carry on the partnership business. What we said in *Robert E. Ford, supra*, is, we think, appropriate here as to the consequences following the death of Arthur Lehman:

* * * The partnership, as such, engaged in no transaction affecting it as a computing unit. It continued after the withdrawal of the partner in the same business, under the same name, without interruption, as agreed. Realistically speaking, the only change that has taken place is that the remaining partners have acquired a greater interest in the profits and surplus when final liquidation occurs. After that transaction occurred, the partnership had the same identical assets as before. The partnership as a computing unit has neither disposed of any of its old assets nor acquired any new assets. * * *

Continuing further, we said in the *Ford* case:

* * * The respondent suggests that the withdrawal of the partner whose interest was purchased on November 26, 1938, constituted a dissolution or termination of the partnership and the commencement of a new partnership. By the general rule of law, death or withdrawal of a partner dissolves the partnership, but it is competent for the parties to provide otherwise. As stated by Rowley in his work on Modern Law of Partnership (sec. 550):

"* * * Whatever in the absence of express agreement of all partners may be the technical effect of the admission of a new member or retirement of an old member, these conditions are ordinarily cared for by agreement, either under

provisions in partnership articles authorizing a retirement, or arrangements made by the partners at the time of retirement. * * *"
Cf. *Burwell* v. *Mandeville's Executors,* 2 How. 560, 576.

As we have already stated, the facts of the instant case disclose that during the 10-year period immediately prior to the sale by petitioner of the fractional share of his partnership interest on January 1, 1937, there were several changes in the partners of Lehman Brothers, including the change brought about by the death of Arthur Lehman. These changes were usually followed by the execution of new partnership agreements. The record is clear, however, that these changes in the membership of the firm had no effect on the continuation of the firm's business or on the continuing nature of the petitioner's investment or interest therein. During all of these changes he remained a member of the partnership with an interest which at no time was less than 13.425 per cent of the whole. Therefore, we hold against respondent's alternative contention (2) and conclude that the death of Arthur Lehman in 1936 did not work such a change in the partnership of Lehman Brothers as to cause a change in the period of holding of petitioner's interest in the partnership, nor did the other changes which took place from time to time over the period 1925 to 1936, inclusive, do so.

We, therefore, conclude from all the facts that the fractional interest in Lehman Brothers which petitioner sold on January 1, 1937, was one which he had held for more than 10 years and that only 30 per cent of the gain from such sale should be taken into account under the provisions of section 117 of the code.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

LEECH, *J.,* concurs only in the result.

————

HARLAN, *J.,* dissenting: I agree with the contentions of the Commissioner in this case that the original partnership was destroyed on May 16, 1936, with the death of the partner, Arthur Lehman, and that the partnership interest which the taxpayer sold was an interest in a new partnership formed after May 16, 1936, and that his rights as to claiming a long term capital gain must be dated from the date of the formation of the new partnership. The case principally relied upon by the prevailing opinion, *Robert E. Ford,* 6 T. C. 499, does not seem to be authority for the conclusion of the prevailing opinion. In the *Ford* case a partner withdrew from a partnership and disposed of his interest. The Uniform Partnership Act, which was then in force in the State of Minnesota, where the question arose, provided that a transfer of interest does not of itself dissolve a partnership.

In the case at bar section 62 of the Partnership Law of New York specifically provides that a partnership shall be dissolved by the death of any partner. This clause was directly under consideration by the Circuit Court of Appeals for the Second Circuit in *Darcey* v. *Commissioner*, 66 Fed. (2d) 581; certiorari denied, 290 U. S. 705, wherein it was held that after the death of a partner the partnership could not be maintained against a provision of the statutory law of New York by any contract between the parties. The court held that the partners could agree as to a division of partnership income after the death of a partner, but that such agreement did not result in prolonging the life of the partnership. Therefore the partnership of Lehman Brothers expired with the death of Arthur Lehman and the interest which the taxpayer held in that partnership prior to Arthur Lehman's death terminated at that time.

OPPER, *J.*, agrees with this dissent.