opinion. Leech, Judge: Petitioner contends that the only issue raised by me pleadings is whether the loss sustained in 1940 was attributable to the operation of a trade or business regularly carried on by the petitioner. The deficiency notice, as will be noted in the findings of fact, explained that the deficiency resulted from the disallowance by respondent of the deduction in the taxable year, 1941, of any carry-over loss from 1940 because of the provisions of section 122 (d) (5) of the Internal Revenue Code. Several reasons for that action were there stated. The petition assigned error as to the validity of those reasons. The action of the respondent affirmed their validity. But the basic issue was and is whether petitioner is entitled to deduct in the taxable year, as a net operating loss carry-over from the preceding year, the sum of $41,281.28, under the provisions of section 122 (d) (5) of the code, the deduction of which was disallowed. Thus, at the trial respondent modified some of the statements in the deficiency notice and advanced several additional grounds in support of the disallowance under section 122 (d) (5). One of the additional grounds was that the amounts of $55,368.50 and the $17,887.76 charged against petitioner’s partnership account, were losses sustained in 1939. Another ground was that on the retirement of petitioner from the firm on March 31,1939, he transferred his interest in the partnership to the remaining partners, and this constituted a capital transaction. These are not new issues, but additional reasons in support of the disallowance of the deduction. They were timely raised. There was no surprise. Petitioner neither asserts nor is there anything to indicate any evidence other than that presented could have been offered by the petitioner under any other circumstances. The authorities support the right of the respondent to advance additional grounds in support of the action taken by him where no element of surprise is involved. Helvering v. Gowran, 302 U. S. 238; Estate of Arthur D. Cronin, 7 T. C. 1403; James W. Pennock, Jr., 25 B. T. A. 1331; affd., 64 Fed. (2d) 1018; Standard Oil Co., 43 B. T. A. 973; affd., 129 Fed. (2d) 363; certiorari denied, 317 U. S. 688. To entitle the petitioner to succeed here it is incumbent upon him to establish that the deduction claimed on his 1940 return was an operating loss as defined in section 122, and as limited by subdivision (d) (5) of the Internal Revenue Code.[1] We think on this record he has failed to establish this necessary premise. Under the controlling authorities, he disposed of a capital asset, and the resulting loss was not incurred in the operation of a business regularly carried on by him in the year 1940. It is to be noted that the partnership was validly created pursuant to the laws of the State of New York pertaining to a limited partnership. The legal character of the interest of a partner is controlled by the law of that state. Lyeth v. Hoey, 305 U. S. 188; Allan S. Lehman, 7 T. C. 1088. This partnership was to continue for a fixed term. Petitioner was permitted to retire prior to the expiration date. No sale or liquidation of the partnership assets was effected. As a partner in a going concern, he had no specific interest in any specific partnership assets. Sec. 51 (2) (a), New York Partnership Law; Robert E. Ford, 6 T. C. 499.[2] His interest is defined as “his share of the profits and surplus and the same is personal property.” Sec. 52, New York Partnership Law; Blodgett v. Silberman, 277 U. S. 1; Case v. Beauregard, 99 U. S. 119. When a partner retires from a continuing partnership the remaining partners succeed to the exclusive possession and contol of the partnership assets. The situation is different where the partnership is being liquidated and the assets distributed. Annie Laurie Crawford et al., Executors, 39 B. T. A. 521. Since the certificate of limited partnership did not provide otherwise, he was entitled to have his interest valued in the event he was unable to agree with the remaining partners as to its value. Sec. 73, New York Partnership Law. That they did so agree is evidenced by the agreement of March 30, 1940. Petitioner and the firm not only exchanged mutual releases, but he received his pro rata share of doubtful accounts not liquidated as of March 30,1940, totaling $1,142,439.50, of which his share was $61,595.48. True, petitioner testified that these assets were of no value. We do not accept this appraisement. The record shows that $45,197.24 consisted of cash in insolvent banks. These accounts had not been finally liquidated. So, on this record we must assume substantial recoveries would result. In fact, at the time of the trial petitioner had received $8,732.68 on account of his interest in the doubtful accounts which were assigned to him as part consideration for the transfer of his partnership interest. We think the conclusion to be drawn from this record is that on March 30,1940, petitioner transferred his interest as of March 1939 to the remaining partners for a valuable consideration, and the transaction constituted a capital transaction. In Williams v. McGowan, 152 Fed. (2d) 570, the Circuit Court of Appeals for the Second Circuit, in which this case arises, said: It has been held that a partner’s interest in a going firm is for tax purposes to be regarded as a “capital asset.” Stilgenbaur v. United States, 115 Fed. (2d) 283; Commissioner v. Shapiro, 125 Fed. (2d) 532. We too accepted the doctrine in McClellan v. Commissioner, 117 Fed. (2d) 988, although we had held the opposite in Helvering v. Smith, 90 Fed. (2d) 590 * * *. In McClellan v. Commissioner, 117 Fed. (2d) 988, the Second Circuit Court of Appeals said: The question presented is whether a loss sustained by a partner upon withdrawing from a partnership in 1934 is an ordinary loss or a capital loss. The Board held it to be the latter, limited by section 117 (d) of the Revenue Act of 1934. * * * The effect of the retiring partner’s withdrawal was to transfer to the other partners for continuance in the business his interest in the stock exchange seat and real estate. The Board correctly held: that the transaction amounted, to a sale of a capital asset to the remaining partners. * * * [Italics supplied.] See also Annie Laurie Crawford et al., Executors, sufra; Dudley T. Humphrey, 32 B. T. A. 280; Robert E. Ford, supra. Having concluded the transaction was a transfer of petitioner’s interest in the partnership to the remaining partners, it is necessary to determine the extent to which the loss resulting therefrom is a net operating loss within the limitations prescribed in subsection (d) (5) of section 122 of the code. Obviously, such transaction was not a part of the business of the partnership, and, so far as is revealed here, petitioner was not engaged in the business of buying and selling partnership interests. Cf. United States v. Adamson, 161 Fed. (2d) 942. The transaction was clearly outside the “business regularly carried on” by the petitioner and no part thereof can be taken into consideration in determining petitioner’s net operating loss for 1940, subject to be carried over into the taxable year 1941. The respondent’s disallowance of the deduction is sustained. Reviewed by the Court. Decision will be entered for the respondent. SEC. 122. NET OPERATING LOSS DEDUCTION. ***«*»• (d) Exceptions and Limitations. — The exceptions and limitations referred to in subsections (a), (b), and (c) shall be as follows: • * * • * * » * (5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions and limitations specified in paragraphs (1) to (4) of this subsection. Respondent acquiesces, 1946-2 C. B. 2.