ESTATE OF MEYER GOLDBERG, DECEASED, ABRAHAM GOLDBERG AND SOLOMON GOLDBERG, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21599.    Promulgated July 12, 1950.

---

*Benjamin E. Shove, Esq.*, for the petitioners.
*Michael Waris, Jr., Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* We have but one issue to decide in this proceeding and that is whether or not the death of Meyer Goldberg, who was a member of the partnership of M. Goldberg & Sons, which partnership owned installment obligations at the date of his death, caused a transmission or disposition of those obligations or any interest therein within the meaning of section 44 (d) of the Internal Revenue Code, resulting in taxable income to the decedent or to his estate, no bond having been filed under the provisions of the statute. Section 44 (d) is printed in the margin.[1] Petitioners ·concede that no bond such

---

[1] SEC. 44. INSTALLMENT BASIS.

\*      \*      \*      \*      \*      \*      \*

(d) GAIN OR LOSS UPON DISPOSITION OF INSTALLMENT OBLIGATIONS.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. \* \* \* This subsection shall not apply to the transmission at death of installment obligations if there is filed with the Commissioner, at such time as he may by regulation prescribe, a bond in such amount and with such sureties as he may deem necessary, conditioned upon the return as income, by the person receiving any payment on such obligations, of the same proportion of such payment as would be returnable as income by the decedent if he had lived and had received such payment. \* \* \*

as is mentioned in the concluding part of section 44 (d) was filed but they strongly contend that no such bond was required because no installment obligations were transmitted by Meyer Goldberg to anyone upon his death. They contend that section 44 (d) has no application under the facts of the instant case. In arguing the meaning of section 44 (d), petitioners state in their brief as follows:

It is clear from the wording of this subdivision that the gain or loss which it makes recognizable arises only if there is a satisfaction at other than face value, or a distribution, transmission, sale or other disposition of the installment obligation. The first inquiry, therefore, must be: Has there been a satisfaction at other than face value, or a distribution, transmission, sale or other disposition of installment obligations? If none of the specified events has occurred, the subdivision has no application and does not become operative.

Petitioners then argue that the death of Meyer Goldberg did not bring about or result in any transmission of installment obligations because: (1) The only installment obligations in this case were the installment obligations owing to the partnership of M. Goldberg & Sons and such installment obligations were the property of the partnership and the decedent Meyer Goldberg did not own them or any interest in them, and (2) according to the provisions of the partnership agreement the partnership was not terminated by the death of Meyer Goldberg and the installment obligations owing to the partnership were not satisfied, sold, disposed of, distributed or transmitted at the death of Meyer Goldberg but continued to be firm assets owned by the partnership.

Respondent on his part contends that the decedent's death did cause such a transmission or disposition. That contention is based upon the well-recognized principle that the death of a partner results in the automatic dissolution of the old partnership, and that the surviving partners and the decedent's estate thereupon immediately become entitled to their respective proportions of the net assets of the partnership as liquidating distributions. In other words, it is the respondent's contention that the death of the decedent had the effect of transmitting to his estate his proportionate interest in the installment obligations which, prior to his death and the dissolution of the partnership, the partnership had owned. "That amounted" says respondent, "to a transmission or disposition of the installment obligations within the meaning of Section 44 (d)."

Respondent strongly relies in support of the foregoing contention upon the case of *F. E. Waddell et al., Executors*, 37 B. T. A. 565, affd., 102 Fed. (2d) 503. We think the *Waddell* case supports respondent's contention and is controlling here. In the *Waddell* case the decedent owned a two-thirds interest in a cattle raising partnership known as

W. N. Waddell & Co., and E. K. Bowman and F. E. Waddell each owned a one-sixth interest therein. At the date of the formation of the partnership the partners owned a fee simple title in certain lands in Texas. An oil company subsequently purchased an interest in those lands and the consideration for the purchase was the principal sum of $100,000, to be paid to the partnership. Of that amount, $80,000 was represented by four promissory notes for $20,000 each. The first two notes were paid to the partnership prior to the decedent's death on September 14, 1932. Subsequent to the decedent's death the remaining two notes were paid to the executors of the decedent's estate and the surviving partners. The partnership of W. N. Waddell & Co., filed a partnership return for the period January 1 to September 14, 1932, reporting partnership net income distributable to the decedent, E. K. Bowman and F. E. Waddell. For the period September 15 to December 31, 1932, a partnership return of income was filed for W. N. Waddell & Co. by the representatives of the decedent's estate and the surviving partners reporting partnership net income distributable to the decedent's estate and the surviving partners. On the last mentioned return the date of organization of the partnership was stated as September 15, 1932. Neither of the aforementioned partnership returns included any portion of the notes due and unpaid at the date of the decedent's death. Upon the death of the decedent, new accounts were set up for W. N. Waddell & Co. in which the estate of the decedent was shown as a partner in place of the decedent. On these facts we held that decedent Waddell's interest in the installment notes was transmitted to his estate at the time of his death and that section 44 (d) was applicable and that the estate was taxable on its part of the income represented by these unpaid installment notes, no bond having been filed as permitted in said subsection. Our decision was affirmed by the Fifth Circuit, the court stating in its opinion as follows:

* * * we agree with the Commissioner and the Board that Waddell's death effecting an immediate dissolution of the partnership, caused an immediate vesting in his estate, subject to the rights and duties incident to the partnership liquidation, of a ⅔ interest in each and every piece and parcel of the partnership property, and subject alone to the liquidation, transmitted to his estate the ⅔ interest in the instalment obligations which, before his death and the dissolution of the partnership, the partnership upon this assumption, had owned. Cf. *Carroll v. Com'r*, 5 Cir., 70 F. 2d 806.

It will not do, we think, to argue as petitioners do, that Waddell's death resulted in the transmission, not of an interest in the notes, but merely of an interest in the partnership, and that his estate stood, as to his interest in the partnership, in the same case that he stood in before his death, for his death operated not only to transmit an interest, but to change the character and condition of the

interest transmitted, from an interest in a going partnership to an interest in the property of a dissolved one.

While we are firmly of the opinion that this is the natural, indeed, the only reasonable construction to be placed on the words of the statute, as applied to the facts of this case, and that resort to interpretation to carry out its intent is not necessary, we agree with the Commissioner also that this is a required construction if the intent and purpose of the Act is to be carried out, and that the Act easily yields such a construction.

Petitioners contend that the *Waddell* case, *supra*, is distinguishable because it is a well-settled rule of law in New York, where the partnership of M. Goldberg & Sons was located, that the joint effects of a partnership belong to the firm and not the partners and that a partner has no individual property in any specific assets of the firm; instead, the interest of each partner in the partnership property is his share in the surplus after the partnership debts are paid and after the partnership accounts are settled. In support of this proposition petitioners cite, among other cases: *Allan S. Lehman*, 7 T. C. 1088, affd., 165 Fed. (2d) 383, certiorari denied, 334 U. S. 819, and *Robert E. Ford*, 6 T. C. 499.

Petitioners argue that under the doctrine of the above cases, although the partnership of M. Goldberg & Sons was dissolved upon decedent's death, the partnership was not terminated but continued to exist until its termination date in 1951 and that, therefore, there was no transmission of the partnership installment obligations to anyone but that they continued to remain the exclusive property of the partnership.

The cases relied upon by petitioners which attach much significance to the continuation of the partnership business pursuant to the provisions of partnership agreements do not involve the application of section 44 (d). They are not concerned with the problem as to whether there was a transfer or transmission of installment obligations within the meaning of that section. On the contrary, each of those cases involved the question as to the length of period during which the partnership had continued to exist for capital gains and other purposes. These cases, we think, are not controlling in the instant case.

We are unable to see where there is any distinction in principle between the facts of the instant case and those which were present in the *Waddell* case, *supra*. Therefore, following that case, we decide the issue involved in favor of the respondent.

*Decision will be entered for the respondent.*