Russell D. Ketcham and Paulina D. Ketcham v. Commissioner.
Ketcham v. Commissioner
Docket No. 55002.
United States Tax Court
T.C. Memo 1955-302; 1955 Tax Ct. Memo LEXIS 37; 14 T.C.M. (CCH) 1162; T.C.M. (RIA) 55302; November 7, 1955
*37 Laurence Graves, Esq., 20 Exchange Place, New York, N. Y., and William J. Harris, Esq., for the petitioners. Max J. Hamburger, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency in income tax of petitioners for the year 1952 in the amount of $33,428.92. The sole issue is whether $53,556.20 received by petitioners in 1952 as distributions of partnership income from Cunningham & Company, and its successor, Ketcham & Company, represented taxable income as determined by respondent, or a return of capital investment as contended by petitioners. Findings of Fact Petitioners, husband and wife, are residents of Wilmington, Delaware, and they filed joint income tax returns for the years 1951 and 1952 with the then collector of internal revenue for the district of Delaware. The stipulated facts, together with the accompanying exhibits, are by this reference made a part hereof. On November 1, 1951, petitioners, for $50,000, purchased an interest in the sole proprietorship business of Thomas F. Cunningham, deceased, who was sole sales representative of Crucible Steel Company of America, *38 hereinafter referred to as Crucible, and Trent Tube Company, hereinafter referred to as Trent, for the sale of their stainless steel products to the du Pont Company, Wilmington, Delaware, and its subsidiaries. Cunningham had acquired the right to represent Crucible and Trent as their exclusive sales representative with respect to du Pont Company and its subsidiaries under agreements dated May 5, 1949, which agreements provided generally for the payment by Crucible and Trent of commissions in the amount of 5 per cent upon orders secured by Cunningham from du Pont and its subsidiaries, when such orders were accepted and payment of the purchase price was made. These agreements ran for one year only, to-wit, until on or about May 5, 1950, and thereafter were cancellable upon 30 days' written notice. Cunningham had acquired the right to represent Crucible and Trent as a result of his own efforts, and he had successfully operated his sole proprietorship until on or about November 1, 1951, as a result of his own unaided efforts. On November 1, 1951, Cunningham entered into a written parnership agreement with Russell D. Ketcham and his wife, Paulina D. Ketcham, under which a partnership *39 called Cunningham & Company was created for the purpose of carrying on the sales agency business previously conducted by Cunningham. Under the partnership agreement Cunningham assigned all interest in his sales agency contracts to the partnership and agreed to cause any new agency contracts to be issued to the partnership. Partnership profits were to be distributed 50 per cent to Cunningham, 25 per cent to Russell D. Ketcham and 25 percent to Paulina D. Ketcham, and losses, if any, were to be borne accordingly. Among other provisions contained in the six and a half page partnership agreement were these: Recital that Cunningham had been engaged in the business of selling steel and steel products on a commission basis "and now because of the condition of his health" wishes to be relieved of many of the activities in connection with such business and desires to bring into such business as an equal partner Russell D. Ketcham. Cunningham was to be managing partner and generally direct the activities and conduct of the partnership business, but only to devote thereto such portion of his time as the condition of his health would permit. Ketcham was to devote his entire time to the business. *40 Mrs. Ketcham was to devote only such time to the partnership as "in her sole discretion she may determine advisable through the channels of her social and business contacts". Martha G. Clark, then and for some time prior thereto an employee as secretary to Cunningham, was to be continued as an employee of the partnership so long as Cunningham "shall deem her employment for the best interest of the partnership". On November 1, 1951, Cunningham was suffering from a heart ailment and had prior thereto sustained two heart attacks. For the execution of the partnership agreement by Cunningham and the transfer by him of his business to the partnership, Russell D. Ketcham and Paulina D. Ketcham paid Cunningham $50,000 which they obtained from J. Simpson Dean, Mrs. Ketcham's father. Dean was interested in establishing Ketcham in business and he initiated and carried on much of the negotiations with Cunningham which began in the summer of 1951 for the purchase by the Ketchams of an interest in Cunningham's business. Dean had theretofore been assistant treasurer of du Pont & Company and was a business man of influence. Cunningham, on account of his health, wanted a partner to assist him *41 and thought Dean's son might be interested, and hence first approached Dean relative thereto. Dean was more interested in putting his son-in-law Ketcham in business. In the negotiations between Cunningham and Dean and Russell Ketcham, Cunningham represented that at that time he had orders on his books, commissions due him somewhere in the neighborhood of $200,000. Dean and Ketcham, after an attempt to do so, were unable to verify Cunningham's estimate that he was entitled to commissions of approximately $200,000, because of the inadequate and confused state of Cunningham's accounting records. They found it impossible to verify his statements. After the formation of Cunningham & Company, the business was carried on by the partnership. New agency contracts were executed by Crucible and Trent in favor of Cunningham & Company, dated February 18, 1952, effective December 15, 1951, for 5 years. Dean materially assisted in securing same. These new contracts extended the agency rights of Cunningham & Company to sell to Hercules Powder Company and Atlas Powder Company, as well as du Pont Company and subsidiaries. In addition, Cunningham & Company entered into a contract with Doyle & *42 Roth Manufacturing Company, Inc., pursuant to which Cunningham & Company acquired the right to sell the products of the said Doyle & Roth to du Pont Company, Hercules Powder Company and Atlas Powder Company, on a commission basis of approximately 5 per cent. Cunningham died suddenly on August 6, 1952, and about September 1, 1952, Mr. and Mrs. Ketcham purchased Cunningham's interest in the partnership from his estate for the sum of $25,600, and thereafter carried on the business under the firm name of Ketcham & Company. Petitioners, in the joint individual income tax return filed by them for the short period November 1, 1951, to December 31, 1951, inclusive, reported the partnership income distributed to them as ordinary income. In an amended return filed by them for the same period, and in the 1952 income tax return filed by them, however, petitioners did not treat the distributions received by them as ordinary income, but as applying against the $50,000 paid by them to Cunningham in the taxable year 1951. In the taxable year 1952 the petitioners received partnership income from Cunningham & Company and Ketcham & Company in the total amount of $53,556.20, divided as follows: *43 Amount
Company
Tax Period
Received
Cunningham & Company
1/1/52 to 8/31/52
$16,505.96
Ketcham & Company
9/1/52 to 12/31/52
37,050.24
Total
$53,556.20
In 1954, Minor D. Munsey, Jr., a certified public accountant, and accountant for Cunningham & Company and Ketcham & Company since about November 1951, prepared an analysis of commissions to be received or earned by Cunningham & Company with respect to orders acquired prior to November 1, 1951, and with respect to orders acquired between November 1, 1951, and September 1, 1952, and thereafter, which discloses, without taking into consideration commissions lost because of cancellations, increases or decreases in orders, the following: Commissions
on orders
Commissions on
acquired be-
Commissions on
orders acquired
tween 11/1/51
orders acquired
Company
before 11/1/51
and 9/1/52
after 9/1/52
Trent Tube Co.
$51,302.30
$43,589.64
$177.87
Crucible Steel Co.
58,650.61
1,535.12
51.35
Tube Warehouse Company, Inc.
79.82
Doyle & Roth Mfg. Company
2,520.64
The $50,000 paid Cunningham by Russell D. Ketcham and Paulina D. Ketcham was not in payment *44 of an assignment by Cunningham to them of an interest in commissions theretofore earned by him, but was rather in payment of their purchase of an interest in Cunningham's business and for their undivided one-half interest in the partnership of Cunningham & Company then created. Cunningham's business at that time was a going business and had a good will value. The $25,600 payment made by petitioners to the estate of Cunningham, about September 1, 1952, was for the purchase of Cunningham's interest in the partnership of Cunningham & Company, and was the purchase of a capital asset, and was not recoverable out of income received, as contended by petitioners, to any extent whatsoever. Opinion The issue here is purely factual. Petitioners seek to reduce their tax liability by claiming that the $50,000 they paid Cunningham was not for an interest in his business, but in payment of their purchase from him of an interest in commissions due him, and furthermore, that the $25,600 they paid Cunningham's estate, after his death, was not for the purchase of Cunningham's interest in the partnership, but in payment of Cunningham's interest in commissions earned by the partnership, and hence *45 both of such amounts were for assets which comprised capital investments and which they were entitled to receive before being taxed for income therefrom. Respondent has determined that both of such amounts were paid by petitioners for purchase by them of a business or partnership interest, and not for specific assets, and hence income realized therefrom was taxable as ordinary income. We think the evidence and the record as a whole sustains the Commissioner's determination and we have so found as an ultimate fact. The facts are detailed in our findings above, and we deem it unnecessary to repeat them here. Notwithstanding the claim of Russell Ketcham and his father-in-law Dean that the $50,000 was paid for the purchase of an interest in Cunningham's commissions, and not for a partnership interest, all of the facts and circumstances, including the partnership agreement and other data, and the motives and intentions of the parties, clearly reveal that the same was in payment for a partnership interest in Cunningham's business. That which emerged after several weeks of negotiations was not a sale or assignment of commissions, but a partnership agreement contained in a six and *46 a half page written instrument, whereby the Ketchams became half owners of Cunningham's business. There was no assignment or other document executed relating to the sale of commissions. It is incredible that a man of Dean's business experience would have paid, or agreed to pay, a consideration of $50,000 and have no writing of some kind evidencing the transaction, or that he would not have satisfied himself with reference to the amount of uncollected commissions due Cunningham before paying $50,000 therefor. Cunningham had no reason to sell his commissions, and Dean, according to his own testimony, was not interested in buying same. What Cunningham, who was in bad health, wanted and needed was a partner to help carry on his business. What Dean wanted was a partnership interest for his daughter and son-in-law. The sale of the partnership interest rather than the sale of its assets was that in which all parties primarily were interested. After Cunningham's death his estate sold to the Ketchams Cunningham's interest in the partnership for $25,600. The partnership agreement made provision for the sale of the interest of a partner in the event of death, and clearly the transaction here *47 between the Ketchams and Cunningham's estate was the purchase by the Ketchams from the estate of Cunningham of his partnership interest in the business. The sale of a partnership interest in a business is a sale of a capital asset. Joseph Pursglove, 20 T.C. 68; Robert E. Ford, 6 T.C. 499. Decision will be entered for the respondent.