Andrew F. Nadol (formerly Andrew F. Nadolski) v. Commissioner.
Nadol v. Commissioner
Docket No. 40911.
United States Tax Court
1954 Tax Ct. Memo LEXIS 265; 13 T.C.M. (CCH) 256; T.C.M. (RIA) 54089; March 26, 1954
John F. Langs, Esq., 2508 Guardian Building, Detroit, Mich., for the petitioner. Robert J. Fetterman, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined the following deficiencies in the petitioner's income tax: Year
Deficiency
1945
$210.01
1946
425.97
1947
192.66
The only issue presented is whether two partnerships of which the petitioner was a member were entitled to deduct for either 1945 or 1946 certain deductions taken as bad debts in their amended returns for 1945 with consequent reductions in the petitioner's distributive shares of income from such partnerships *266 for either 1945 or 1946. The petitioner concedes the correctness of the deficiency for 1947. Findings of Fact Some of the facts have been stipulated and are so found. The petitioner is &n individual residing in Detroit, Michigan. His Federal income tax returns for 1945, 1946 and 1947 were filed with the collector of internal revenue for the district of Michigan. Nadol and Thomas F. Herzog during 1945 and 1946 were equal partners in two separate partnerships, Machine Tool and Die Company and Process Machine Company, hereinafter referred to as Machine Tool and Process, respectively. Nadol and Herzog entered into these partnerships on August 1, 1943. The home offices and principal places of business of both partnerships were located in Detroit, Michigan. The business of the partnerships was the manufacture of tools, dies and fixtures and other machine tool operations. Prior to the formation of the partnerships Nadol had owned Process and Herzog had owned Machine Tool as individual proprietors. In the conduct of their businesses as proprietorships and as partnerships, Machine Tool and Process engaged subcontractors or others to perform work for them, and it was their practice to *267 advance money and to furnish materials and machinery to such of those persons as needed assistance in order that the work would progress on schedule. In March 1944, Andrew Gordon, hereinafter referred to as Gordon, was the owner of Petersburg Machine Company, an individual proprietorship, doing business in Petersburg, Michigan, and hereinafter referred to as Petersburg. He contacted petitioner and Herzog and proposed that the three form a partnership for the conduct of the business which he had been carrying on under the name of Petersburg. Petersburg as a subcontractor performed production machine work and some tool work for Process and Machine Tool. Prior to August 1, 1943, Process had advanced $1,200 to Petersburg. On August 1, 1943, when Process became a partnership between petitioner and Herzog, the amount remained unpaid and the indebtedness was taken over by the partnership as an account receivable owing by Petersburg. As a result of conversations between Gordon, petitioner and Herzog, Gordon proposed that petitioner and Herzog contribute, as part of their contribution to the capital of the proposed partnership, the above-mentioned account receivable of $1,200 which was still *268 unpaid. He proposed contributing as his share of partnership capital the amount of his net worth as would be shown by an audit of his assets and liabilities on the books of Petersburg which he would have made and the results of which he would submit to them. On the basis of these proposals the petitioner and Herzog joined with Gordon in signing a certificate of co-partnership on March 1, 1944. The certificate which, on May 29, 1944, was filed by Gordon with the Clerk of the Court of Monroe County, Michigan, recited, in part: "We, the undersigned, do hereby certify in pursuance of Section 9932, C.L. 1929, as amended, that we intend to carry on a business, in the Village of Petersburg, State of Michigan, as Co-partners under the firm name and style of Petersburg Machine Company. Business Address, Petersburg, Michigan, which said co-partnership is to continue for a period not longer than ten (10) years as limited by the partnership contract." There was also prepared a proposed written agreement, dated March 1, 1944, titled "Preliminary Partnership Agreement." The instrument recited that petitioner, Herzog and Gordon were desirous of forming a partnership, called Petersburg Machine *269 Company, to operate a general machine manufacturing business under the management of Gordon. It also recited that the parties had contributed capital, the amount of which was not then determinable, and that when an audit was made to determine the amount of capital and assets advanced by each of the parties to the partnership, a final partnership agreement would be entered into between the parties. Neither the foregoing instrument nor any other purporting to be a partnership agreement was ever signed by any of the parties. Thereafter on April 6, 1944 and May 18, 1944, certain machinery and fixtures totaling $2,225 were advanced to Petersburg. These advances were recorded in the account which Process carried on its books with respect to the indebtedness of $1,200 owing by Petersburg to Process on August 1, 1943. The total debit balance in the account after the foregoing advances was $3,425 and remained at that amount until December 31, 1946. Beginning March 31, 1944, and continuing through August 31, 1944, there was advanced to Petersburg directly, in cash and by payment of its bills for materials and expenses, a total of $23,757.39. Of that amount Petersburg repaid a total of $8,000 *270 during the period from October 17 to December 12, 1944, leaving a net balance of $15,757.39 of advances outstanding on December 31, 1944. The foregoing transactions were recorded in an account carried on the books of Machine Tool in the name of Petersburg. In making advances to subcontractors and others doing work for them, it was the practice of Machine Tool and Process to limit the maximum amount thereof to around $5,000 to any one party. On no occasion did either advance to one party such a large sum as the total advanced to Petersburg in 1944. Other advances and credits recorded in the account carried on the books of Machine Tool with respect to Petersburg were payments $630totaling made in 1945 in behalf of Petersburg and credits to it totaling $715.93 for that year and a payment of $255 made on July 31, 1946, in its behalf. The debit balance in the account at the close of July 31, 1946, was $15,926.46 and remained at that amount until December 31, 1946. Gordon at no time furnished Herzog or the petitioner with the results of an audit of his financial condition as shown by the books of Petersburg. On May 23, 1945, petitioner sent his accountant to Petersburg to examine the books *271 in order to ascertain the net worth of Petersburg. From his examination the accountant concluded that on February 28, 1945, its liabilities exceeded its assets by $20,000. Gordon disputed this conclusion. Petitioner then suggested to Herzog that they demand payment from Gordon of the amounts carried on the books of Machine Tool and Process as owing by Petersburg to those partnerships. In January 1946 the petitioner and Herzog submitted to Gordon a proposed written agreement which recited that Petersburg was not a partnership; that petitioner and Herzog had not been held out by Gordon as partners in Petersburg; that there were no adequate records from which a determination could be made of the financial condition of Petersburg; that petitioner and Herzog had contributed nothing to Petersburg as partners and had not held themselves out as partners therein; and that the only relationship existing between petitioner and Herzog on the one hand and Gordon on the other was that of debtor and creditor for sums advanced by petitioner and Herzog to Gordon, doing business as Petersburg. The proposed agreement was never executed. On May 14, 1946, the petitioner again sent his accounting [accountant] *272 to Petersburg to examine its books and ascertain, if possible, its current financial condition. Thereafter and until July 15, 1946, the accountant was there on several occasions for that purpose. Although all of Petersburg's records were not available to the accountant, he concluded from those that were available to him that on June 30, 1946, Petersburg's assets amounted to approximately $42,500, its liabilities amounted to approximately $85,750, and that the liabilities exceeded assets by approximately $43,250. Gordon disagreed with the accountant's conclusion. In his computation of the assets the accountant did not include any amount for a claim against the Government on certain contracts. Gordon contended that the claim should have been included in an amount of about $12,000. Other items were also controverted. Gordon and his bookkeeper prepared a statement of assets and liabilities which Gordon submitted to the accountant and which he contended more accurately reflected Petersburg's financial condition than that indicated by the accountant's computations. However, the statement submitted by Gordon showed Petersburg's liabilities as being from $10,000 to $15,000 in excess of its *273 assets. Gordon signed and filed partnership returns of income for the Petersburg Machine Company for the taxable years ended February 28, 1945 and 1946 with the collecter of internal revenue for the district of Michigan and therein listed himself, the petitioner, and Herzog as partners. The returns showed the partners' distributive shares of income and loss for the respective years as follows: Year ending
Year ending
February
February
28, 1945
28, 1946
Gordon
$4,955.72
$4,028.27
Herzog
352.87
1,235.86 loss
Nadol
352.87
1,235.86 loss
$5,661.46
$1,556.55 The petitioner did not report any income or deduct any loss from Petersburg on his individual income tax returns for 1944, 1945 or 1946. Nor during those years did he make any withdrawals from Petersburg. On March 30, 1946, petitioner by letter advised the collector of internal revenue, Detroit, Michigan, that neither he nor Herzog was a partner in Petersburg during the taxable year ended February 28, 1945. On May 29, 1946, Gordon signed and delivered to counsel for petitioner an offer which recited that he had discussed with Herzog the proposed retirement of petitioner and Herzog from Petersburg; *274 that the partnership should be dissolved as of May 31, 1946; that he (Gordon) would save them harmless and assume all the liabilities of Petersburg; that he would pledge his interest in Gelatin Capsule Company as security for such pledge; that any claims or interests of petitioner and Herzog in Petersburg should be canceled; and that the offer would expire June 6, 1946. Petitioner and Herzog did not agree to Gordon's proposal. When no agreement could be reached, the petitioner and Herzog on August 2, 1946, filed a verified bill of complaint against Gordon in the Circuit Court for the County of Monroe, in Chancery, providing, in part, as follows: "2. That on or about March 1, 1944, the defendant, Andrew Gordon approached the plaintiffs, Thomas F. Herzog and Andrew F. Nadolski, and requested them to become partners with the defendant in the Petersburg Machine Company, which was operated by the defendant in the Village of Petersburg, Monroe County, Michigan. "3. That on or about March 1, 1944, the defendant, Andrew Gordon at the time that he approached the plaintiffs requesting them to become partners with him in the Petersburg Machine Company, and requesting the plaintiffs to place *275 money in the business venture, informed the plaintiffs that the Petersburg Machine Company had a net worth of approximately $40,000.00 and, further, that if they, the plaintiffs, would invest approximately $20,000.00 in the business venture that he, the defendant, would have an audit made and would furnish figures to the plaintiffs, indicating a net worth of approximately $40,000.00. * * *
"5. The defendant informed the plaintiffs that he would give to them a one-half interest in the business for the sum of $20,000.00, to be divided between the plaintiffs so that they would each have a 25% interest in the Petersburg Machine Company. * * *
"7. That on or about the first day of March, 1944, the plaintiffs, relying upon the false and fraudulent statements of the defendant as to his financial position did enter into a partnership arrangement with the defendant and executed and filed a partnership certificate in the County Clerk's office for the County of Monroe, State of Michigan, wherein the plaintiffs and the defendant state that they were engaged in the partnership known as the Petersburg Machine Company and did invest in the Petersburg Machine Company approximately $20,000.00. *276 * * *
"9. That the operations of the Petersburg Machine Company, as a partnership, were conducted primarily by the defendant, Andrew Gordon, and these plaintiffs charge the fact to be they were conducted in a very loose and improper manner without regard to facts and figures or good business principles and with a complete lack of records and without regard to protecting the rights of the parties hereto or creditors. * * *
"12. That the defendant has grossly mismanaged the Petersburg Machine Company. "13. That although the partnership did not show a profit the defendant has taken partnership funds which do not belong to him for his own personal use. * * *
"16. That there are numerous creditors who are requesting payment of their obligations and that some steps must be taken to preserve the assets of the partnership for the benefit of the plaintiffs herein and the creditors. "17. That the plaintiffs have requested and do hereby request that the defendant refrain from further conducting the business of Petersburg Machine Company, and turn over the assets of said business to plaintiffs." Nadol and Herzog prayed that an injunction be granted enjoining Gordon from *277 acting in any way in regard to the assets of Petersburg; that a receiver be appointed and the assets be collected and liquidated and distribution made therefor; that all assets not used to satisfy creditors of Petersburg be turned over to petitioner and Herzog in satisfaction of the money which they advanced to Petersburg, and that the defendant make an accounting; and for such further relief in equity as the Court might grant. On August 2, 1946, an Order to Show Cause why a temporary receiver should not be appointed for Petersburg was entered by the Circuit Court for the County of Monroe, and Gordon was enjoined from doing any act which would jeopardize the assets of Petersburg. On August 7, 1946, an answer to the Order to Show Cause was filed by Gordon, in which it was alleged, in effect, that a partnership was not created on March 1, 1944, but had been created later at the instigation of the petitioner and Herzog. No hearing was held respecting the issue thus raised. After filing the suit and being of the opinion that the advances theretofore made to Petersburg and recorded on the books of Machine Tool and Process, as set out above, were a loss and in an attempt to limit his *278 loss with respect to Petersburg to that which he considered already had been sustained, the petitioner, on August 9, 1946, entered into an agreement with Herzog which provided as follows: "WHEREAS, the parties [Herzog as First Party and petitioner as Second Party] hereto on or about March 1, 1944, did execute a certain partnership certificate with one, Andrew Gordon, establishing a partnership called the Petersburg Machine Company with place of business and offices in the Village of Petersburg, Monroe County, Michigan, and, "WHEREAS, the parties have found that the operation of the Petersburg Machine Company have not been properly conducted by Andrew Gordon, and "WHEREAS, there was filed in the Circuit Court for the County of Monroe, Michigan, in Chancery, on August 2, 1946, a suit by the parties hereto against Andrew Gordon for an accounting, dissolution of the partnership and an appointment of a receiver, and "WHEREAS, the First Party is desirous of saving such expense as is possible in the possible liquidation and dissolution of the Petersburg Machine Company, and "WHEREAS, some disagreement has arisen betwen the parties hereto as to the method of disposing of, liquidating *279 or working out the problems of the Petersburg Machine Company, "NOW, THEREFORE, in consideration of One Dollar and other good and valuable consideration, the Second Party does hereby sell, assign and set over all of the right, title and interest which he has in the Petersburg Machine Company under the partnership arrangement entered into on March 1, 1944, including all property of every name, nature, kind and description wherever the same may be situated belonging to the Petersburg Machine Company to First Party. "It Is Further Agreed between the parties hereto that in consideration of the Second Party selling, assigning and conveying his interest in the Petersburg Machine Company to the First Party harmless and free of any obligation in connection with the liquidation, dissolution or other disposition of the Petersburg Machine Company, its assets and liabilities. [liability] The First Party in connection herewith agrees that he will defend any and all actions brought against the Second Party by any party of interest in the Petersburg Machine Company, creditor or otherwise, for the purpose of holding the Second Party harmless under this Agreement. "Second Party agrees that *280 he will execute all papers necessary to assist the First Party in the liquidation, sale or other disposition of the Petersburg Machine Company. "It Is Further Agreed between the parties that such sums of money which are due and owing by the Petersburg Machine Company to the Machine Tool and Die Company and the Process Machine Company, of which both parties are partners, and such machinery which may have belonged to Machine Tool and Die Company and/or Process Machine Company, which is in the plant or under the control of the Petersburg Machine Company, will not be demanded of the Petersburg Machine Company, and the parties will not cause any claim to be made against the Petersburg Machine Company therefore. "This Agreement to be binding upon the parties hereto, their heirs, successors and assigns." At no time since the execution of the foregoing agreement has petitioner been called on to make payment of any indebtedness to Petersburg. Following the execution of the agreement of August 9, 1946, and throughout the remainder of 1946 and thereafter, Gordon and Herzog continued to operate Petersburg as a partnership consisting only of themselves. Between July and the end of December *281 1946 Nadol made no investigation to determine whether the financial condition of Petersburg was any different from what it had been in May or June 1946. After August 9, 1946, he made no demand upon Gordon, or Herzog, for repayment of the above-mentioned advances to Petersburg. On December 31, 1946, journal entries were made in the books of Machine Tool and of Process whereby the amounts of $15,926.46 and $3,425, respectively, in the Petersburg accounts were charged off as bad debts and the investment accounts of petitioner and of Herzog in Machine Tool and in Process were reduced by one half of such amounts or by $7,963.23 and $1,712.50, respectively. In the original partnership returns filed for Machine Tool and for Process for 1945 and in the returns filed for them for 1946, no deductions were taken for bad debts. On October 21, 1949, petitioner filed amended returns for 1945 for those partnerships, in which deductions were taken for bad debts with respect to the advances to Petersburg. The deductions so taken were $7,963.23 in the case of Machine Tool and $1,712.50 in the case of Process. For the purpose of showing the partner's distributive shares of the income of the partnerships, *282 the foregoing amounts were treated in the amended returns as being applicable solely to the petitioner's share of the profits of the respective partnerships. Such treatment resulted in the amended return of Machine Tool showing that petitioner had a loss of $4,161.04 from that partnership instead of a distributive share of profits of $3,802.19 as shown in the partnership's original return. Likewise, the amended return of Process showed petitioner's distributive share of the profits of that partnership as $66,309.25 instead of $68,021.75 as shown in the partnership's original return. On the same day the petitioner filed an amended individual income tax return for himself for 1945 in which he reported as his loss and as his distributive share of profits from Machine Tool and Process the respective amounts shown in the amended returns for those partnerships as applicable to him. On October 21, 1949, the petitioner also filed a claim for refund for 1945 which was grounded on the above-mentioned bad debt deductions reflected in the amended returns for the partnerships for 1945 and in his amended individual income tax return for that year. Thereafter on March 10, 1952, the petitioner filed *283 a claim for refund for 1946 as a protective measure in event of a determination that the bad debt deductions were allowable for that year instead of 1945. In determining the deficiency here involved for 1945 the respondent determined that the deductions taken in the amended partnership returns of income of Machine Tool and Process for 1945 as bad debts arising from advances to Petersburg were not allowable and that, accordingly, the petitioner's distributive shares of income from Machine Tool and from Process as reported in his original income tax return for 1945 were not to be reduced on account of such deductions. Opinion On August 9, 1946, and at December 31, 1946, the balance of the advances made to Petersburg appeared in the Petersburg account on the books of Machine Tool at $15,926.46 and in the Petersburg account on the books of Process at $3,425 or at a total of $19,351.46. The petitioner first takes the position that the foregoing amounts represented indebtedness owing by Petersburg to Machine Tool and Process, respectively. He then contends that such indebtedness became uncollectible and worthless in 1945 or 1946, and that since he owned a one-half interest in each, *284 Machine Tool and Process, his distributive shares of profit from those partnerships for the year in which the indebtedness became worthless are to be reduced by one half of the respective amounts of such indebtedness, or by a total of $9,675.73, on the ground that the amounts either represented deductible worthless debts or represented deductible losses. The respondent contends that petitioner was a partner in Petersburg; that the advances in question did not in 1945 or in 1946 represent indebtedness owing by Petersburg to Machine Tool and Process; that if the advances in question constituted indebtedness owing to them in 1945 or 1946, the petitioner has not shown that they became worthless in either of those years or that he suffered a loss with respect thereto in either of the years. The petitioner takes the position here that he did not at any time join himself with Herzog and Gordon in partnership for the conduct of the business carried on under the name of Petersburg. The formation of a partnership is dependent upon the intent of the parties to join together as partners to carry on a business. Jasper Sipes, 31 B.T.A. 709; N. B. Drew, 12 T.C. 5, 12. *285 The intent of the parties is a question of fact. Commissioner v. Tower, 327 U.S. 280. In support of the view that petitioner joined in partnership with Herzog and Gordon for the conduct of business as Petersburg is the fact that on March 1, 1944, the three joined in signing a certificate of partnership which in May 1944 was filed of record with the Clerk of Court for the County in Michigan in which the business of Petersburg was conducted. Despite the fact that Gordon's conduct thereafter appears to have been unsatisfactory, particularly to the petitioner, the certificate continued of record, without modification or change, at all times subsequent to its filing and throughout the periods material herein. In their bill of complaint against Gordon, filed on August 2, 1946, and which was sworn to by them, the petitioner and Herzog alleged that on or about March 1, 1944, they "did enter into a partnership arrangement" with Gordon and "That the operations of the Petersburg Machine Company, as a partnership, were conducted primarily by" Gordon. The agreement of August 9, 1946, between petitioner and Herzog recites the formation of a partnership between them and Gordon, the *286 conduct of business by the partnership, and the transfer of petitioner's interest in the partnership to Herzog. Further, Gordon filed partnership returns of income for the business for the fiscal years ended February 28, 1945, and February 28, 1946, wherein he showed himself, petitioner and Herzog as the members of the partnership. From a consideration of the foregoing in connection with all the other evidence bearing on the question, we are of the opinion that from or about March 1, 1944 until August 9, 1946, a partnership existed between petitioner, Herzog and Gordon in the conduct of the Petersburg business, with petitioner having a one-fourth interest therein. Furthermore, as was said in Maletis v. United States, 97 Fed. Supp. 562. "A partnership in which all of the partners have admitted the proper intent, may not be repudiated after its operations have ceased and its affairs have been settled in order to obtain a tax advantage for one of its partners." The next question involves the treatment to be accorded the advances which Petersburg received and which were recorded in accounts for Petersburg on the books of Machine Tool and Process. The allegations contained *287 in the bill of complaint are to the effect that the petitioner and Herzog acquired a one-half interest (one-fourth interest to each) in the Petersburg partnership in return for an investment therein of approximately $20,000. The record is far from clear as to the manner or form in which the investment was made. However, it shows that in the negotiations preceding formation of the Petersburg partnership, Gordon proposed that petitioner and Herzog contribute as capital of the partnership the indebtedness of $1,200 then owing by Petersburg (sole proprietorship) to Process. The record is silent as to the manner or form in which he proposed that they should contribute the remainder of the approximately $20,000 which they alleged they invested in the Petersburg partnership. However, it is shown that shortly after the formation of the Petersburg partnership on or about March 1, 1944, Process advanced to it $2,225 and Machine Tool advanced to it a total of $23,757.39, which was reduced to $15,757.39 by repayments totaling $8,000. It was the practice of Machine Tool and Process to limit to a maximum of about $5,000 the advances they made to parties doing work for them. Never before had either *288 Machine Tool or Process advanced such a large sum to any subcontractor as the total advanced to the Petersburg partnership shortly after March 1, 1944. The $1,200 owing by Petersburg (sole proprietorship) to Process on March 1, 1944, plus advances (less repayments) thereafter made to July 31, 1946, shows a total of $19,351.46 on the latter date. That amount would fall within the sum of "approximately $20,000" alleged by petitioner and Herzog in the bill of complaint as having been invested by them in the Petersburg partnership. Since the record discloses that the petitioner and Herzog made an investment of approximately $20,000 in the Petersburg partnership but fails to disclose that anything other than the advances represented by the $19,351.46 was paid or transferred to that partnership, we conclude that such advances constituted the investment made by petitioner and Herzog in that partnership and payment for their respective one-fourth interests therein. In that situation the advances represented withdrawals of money or property, or both, made by petitioner and Herzog from Machine Tool and Process and invested in the Petersburg partnership. Although it appears that Machine Tool *289 and Process carried the advances on their books as indebtedness owing to them by the Petersburg partnership, we are unable to find from the record presented that that partnership, in fact, became indebted to them therefor. Since the $19,351.46 did not represent an indebtedness owing to Machine Tool and Process, there is no ground for a holding that either was entitled to a bad debt deduction with respect thereto for any year. Consequently, there is no ground for holding that the petitioner's distributive shares of income from Machine Tool and Process for 1945 or 1946 are to be reduced on account of an indebtedness owing to those partnerships by Petersburg becoming worthless. The remaining question is whether the petitioner sustained a loss with respect to his interest in the Petersburg partnership and, if so, the amount thereof. The evidence shows that on August 9, 1946, the petitioner transferred his interest in that partnership to Herzog in exchange for, or in consideration of, the latter's promise to save him harmless from such liability as he (petitioner), as a member of the partnership, might have with respect to any indebtedness of the partnership. Although the record does *290 not afford a basis for determining with exactness the extent of such liability of the petitioner, such evidence as there is that bears on the question indicates that the partnership was insolvent to the extent of a least $10,000 and probably much more. In view of this and since so far as otherwise appears the agreement between petitioner and Herzog appears to have been an arm's length transaction, we fail to see anything in the transaction from which to conclude that any element of gift passed from petitioner to Herzog under the agreement. The petitioner's interest in the Petersburg partnership was a capital asset and any gain realized, or loss sustained, on its sale or exchange constituted capital gain or loss. Allan S. Lehman, 7 T.C. 1088, affd. 165 Fed. (2d) 383, certiorari denied, 334 U.S. 819; section 117 of the Internal Revenue Code. By the agreement of August 9, 1946, the petitioner transferred his interest in the partnership to Herzog in exchange for the promise of the latter to save him harmless with respect to his (petitioner's) prior membership in the partnership. By the exchange the petitioner's interest *291 in the partnership was terminated and thenceforth he not only had no investment in the partnership but could not expect to receive anything on account of his investment or interest therein. So far as petitioner was concerned, the agreement of August 9, 1946, constituted a closed and completed transaction with respect to his interest in the partnership and resulted in the full amount of his investment in the partnership becoming a loss to him. To July 31, 1946, total advances to the Petersburg partnership amounted to $19,351.46, of which one half, or $9,675.73, is to be regarded as an investment by the petitioner in the partnership. The petitioner made no withdrawals from the partnership and reported in his income tax returns for 1945 and 1946 no distributive share of its profits or loss. The petitioner's distributive share of the partnership profits as disclosed by the partnership return for the year ended February 28, 1945, was $352.87, and his distributive share of the partnership loss as disclosed by the partnership return for the year ended February 28, 1946, was $1,235.86. Since the petitioner did not report the foregoing distributive shares in his returns for the respective *292 years, it is apparent that he erroneously omitted them. However, since the respondent has not moved to increase the deficiency for 1945, the $352.87 may not now be included in the petitioner's income for that year. Since the petitioner's share of the partnership loss, $1,235.86, was properly deductible by petitioner for 1946, and since no question of an increased deficiency is involved, the amount is to be allowed as a deduction in determining petitioner's income for 1946. The record does not show the result of the operations of the partnership for the period from March 1, 1946 to August 9, 1946. Consequently, no determination can be made as to the amount of the petitioner's distributive share of profits or loss, if any, for that period which is to be included in his return for 1946. Increasing the petitioner's investment of $9,675.73 by his share of the partnership profits, $352.87, which were not withdrawn by him, and reducing that total by his distributive share of loss, $1,235.86, allowed herein as a deduction, results in a net investment by petitioner in the Petersburg partnership of $8,792.74 on July 31, 1946. Since there is nothing to indicate that the amount of the investment *293 was materially different on August 9, 1946, to what it was on July 31, 1946, we conclude that it remained the same on the later date. In view of what has been said above, and since the petitioner had held his interest in the Petersburg partnership for more than six months at the time he exchanged it on August 9, 1946, we hold that he sustained thereon a long-term capital loss of $8,792.74 in 1946 which is to be allowed os a deduction for that year to the extent permissible by the limitations contained in sections 23 and 117 of the Code. Decision will be entered under Rule 50.