H. S. ANDERSON, Jr., et al.,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 14796.

United States Court of Appeals
Ninth Circuit.

April 23, 1956.

MacKay, McGregor, Reynolds & Bennion, A. Calder MacKay, Adam Y. Bennion, Stafford R. Grady, Los Angeles, Cal., for appellant.

H. Brian Holland, Asst. Atty. Gen., Harry Marselli, Lee A. Jackson, A. F. Prescott, Walter Akerman, Jr., Sp. Asst. to Atty. Gen., Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, ORR and FEE, Circuit Judges.

ORR, Circuit Judge.

Consolidated for trial and on this appeal are several actions brought by appellants to recover alleged overpayments of income tax for the years 1942 and 1943. Relief was denied in the trial court.

Taxpayers assert two reasons why they should be allowed deductions, first on the ordinary and necessary business expense provision of the Internal Revenue Code of 1939, § 23(a), 26 U.S.C.A., and secondly under the depreciation provision of the 1939 Code, § 23(l).

The following facts either were stipulated or appear in the findings of the trial court. H. S. Anderson, Sr. at the time of his death, on December 27, 1941, held partnership interests in two co-partnerships, viz. "H. S. Anderson," hereafter referred to as the California partnership, and "Anderson Brothers Supply Company of Alaska," hereafter the Alaska partnership.[1]

The California partnership was created in 1938 by oral agreement of H. S. Anderson, Sr., who held a 75% interest and his son, appellant H. S. Anderson, Jr. who held the remaining 25% interest.

The Alaska partnership was created by written agreement in 1940, H. S. Anderson, Sr. holding a 40% interest, the remainder held by appellants H. S. Anderson, Jr., Robert W. Anderson and John Hardy Anderson, sons of H. S. Anderson, Sr.

On December 11th, 1942, following the death of H. S. Anderson, Sr., an agreement was entered into by and between Orien H. Anderson, widow of H. S. Anderson, Sr.,[2] H. S. Anderson, Jr., as administrator of the estate of H. S. Anderson, Sr., H. S. Anderson, Jr., Robert W. Anderson and John Hardy Anderson individually, and Orien H. Anderson as guardian of William Todd Anderson, son of the deceased by his second marriage.

Among other things the agreement recited that payments would be made by the Surviving partners of the deceased H. S. Anderson, Sr., "in full satisfaction and discharge of all claims of the estate of H. S. Anderson, deceased, for and on account of the interest of said H. S. Anderson, in his lifetime and that his estate has acquired since his death in and to the California [Alaska] partnership." Pursuant to this agreement appellants H. S. Anderson, Jr., Robert W. Anderson and John Hardy Anderson paid the estate the agreed sums of $75,000 for the deceased's interest in the California partnership and $50,000 for the deceased's interest in the Alaska partnership and in addition further amounts

---

1. It is stipulated that both partnerships were organized under the law of California. California has enacted the Uniform Partnership Act, West's Annotated California Codes, Calif.Corporations Code, §§ 15001–15045.

2. Orien H. Anderson is the step-mother of appellants H. S. Anderson, Robert W. Anderson and John Hardy Anderson.

representing money owed to the estate by the partnerships on account of pre-existing indebtedness and amounts due the estate as its share in profits of the business pursuant to Cal.Corp.Code, § 15042.[3] The business was continued as limited partnerships by the said sons, Ethel H. Anderson, wife of H. S. Anderson, Jr. and Gloria S. Anderson, wife of Robert W. Anderson.

At all pertinent times the business conducted by the said partnerships consisted of subsistence contract work, defined by stipulation as "feeding and housing defense workers." Operations were conducted principally at military bases and defense plants, pursuant to contracts granting concessions. The district court found that a reasonable estimate of the useful economic life of the respective contracts and purchase orders under which the partnerships were operating at the time of H. S. Anderson, Sr.'s death was, for purposes of computing depreciation, two years from and after December 31, 1941.

In the trial court appellants contended that the net worth of the deceased's interest in the California partnership at the time of his death was zero, hence the $75,000 paid to the estate in connection with the purchase of that interest could have been none other than a purchase of the contracts.[4] Similarly, it was contended that $10,561 of the $50,000 sum paid in connection with the estate's interest in the Alaska partnership was a purchase of the deceased's share in contract rights held by the Alaska partnership.[5] Appellants claimed the right to allocate the respective purchase prices among the said contracts and to amortize the contracts over the period of their useful economic lives.[6]

The trial court rejected appellants' contentions finding as a fact that the money paid by appellants to the estate was a purchase of the decedent's interests in the respective partnerships[7] rather than the purchase of specific partnership assets. Appellants here concede that partnership interests, not specific assets, were purchased and urge a different theory in support of their claim to an increased basis for the contracts with resulting depreciation during the years in issue.

Appellants on this appeal characterize the transactions as follows:

"We respectfully submit that what happened as a matter of fact and as a matter of law was as follows: the decedent's interest in the dissolved partnership was purchased either by the five plaintiffs individually for $75,000 or by a new limited partnership which they had just created by contributing cash capital of $75,000 which in turn was paid into the estate. The old partnership thereupon was terminated and ceased to exist and its assets were distributed in kind to the five plaintiffs or to a new limited partnership."

3. References to Cal.Corp.Code are to West's Annotated California Codes, Calif. Corporations Code.

4. The contracts were carried on the partnership books at a value of zero. They had been concluded, not purchased, by the partnerships.

5. Appellants arrive at the figure of $10,561 by subtracting from the purchase price of $50,000 the book value of the deceased's interest at the time of his death. Appellants, accordingly contend that as a result of the personal nature of the business operations all goodwill ceased upon the death of H. S. Anderson, Sr.

6. Internal Revenue Code of 1939, § 23(l)

provides in part: "Depreciation. A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
   "(1) of property used in the trade or business, or
   "(2) of property held for the production of income. * * *"
See C. I. R. v. Gazette Tel. Co., 10 Cir., 1954, 209 F.2d 926, on the question of contracts as depreciable property.

7. See Cal.Corp.Code, § 15024 which recognizes as a property right of a partner his "interest in the partnership." Cal. Probate Code, § 774 authorizes sale by the estate of a decedent's "partnership interest."

It is undisputed that the contracts for which appellants seek to establish an increased tax basis had, during the lifetime of H. S. Anderson, Sr., a tax basis of zero, having been created by agreement. Upon the death intestate of H. S. Anderson, Sr. his interests in the respective partnerships passed to his estate but his interest in specific partnership properties vested by operation of law in the surviving partners.[8] The tax basis of the contracts in the hands of the surviving partners remained zero.[9] Subsequently the five appellants as individuals or in the name of the new limited partnerships set up by them purchased the decedent's interests. As a result of this purchase the individuals or the said limited partnerships became partners in the old partnerships. Appellants admit that at this stage of events the tax basis of the said contracts in the hands of the old partnerships remained zero.

Appellants' analysis suggests two constructions of what next occurred. In the event the purchase of the decedent's interest was by the appellants individually appellants thereby succeeded to the deceased's interest in the old partnerships, which continued during the winding up, i. e. until the distribution of partnership assets; the old partnerships were then terminated; the partnership assets were then distributed in kind to the several partners and in turn contributed by them to the newly formed limited partnerships.

The second construction is that the decedent's interests were purchased from the estate by the newly formed limited partnerships, the said limited partnerships thereby becoming partners in the old partnerships; the said limited partnerships continued as partners in the old partnerships until the completion of the winding up of the old partnerships; thereupon, the assets were distributed in kind to the surviving partners and the new limited partnerships; the surviving partners then contributed to the limited partnerships the assets received by the former in liquidation.

Appellants insist that under either construction upon the termination of the old partnerships and distribution of the assets in kind the applicable law [10] provides that each partner allocate among the property distributed to him the amount of his tax basis for his partnership interest and hence upon distribution to them of the assets of the California partnership they were entitled to allocate a portion of the $75,000 which represented the cost to them of their partnership interest, hence their tax basis for such interest, among the properties distributed to them.[11] If the theory that appellants purchased the decedent's interests as individuals rather than in the name of the limited partnerships were accepted it is then urged that the transactions would be completed by contributions to the new limited partnerships of the distributed property, the said limited partnerships holding the contributed property with the tax bases of the contributing partners.[12] In either event, it is argued, the net result is that the contracts, held by the old partnerships with a zero basis have, in the hands of the new partnerships, substantial bas-

8. See Cal.Corp.Code, § 15025(2) (d). The death of a partner dissolves the partnership, Cal.Corp.Code, § 15031, but does not itself terminate the partnership, Cal. Corp.Code, §§ 15029–15043.

9. Even the tax basis of the estate for the individual partnership assets is not affected by reason of the death of a partner, First Nat. Bank of Mobile v. C. I. R., 5 Cir., 1950, 183 F.2d 172. Compare also Cal.Corp.Code, § 15025(2) (d) vest-

ing specific property in the surviving partners.

10. I.R.C. of 1939, § 113(a) (13), Regs. 118 39.113(a) (13)–2.

11. Appellants contend that the full $75,-000 was so allocable to the California partnership and $10,561 was allocable to the contracts received from the Alaska partnership.

12. Pursuant to I.R.C. of 1939, § 113(a) (13).

es, determined under section 113(a) (13), supra, and available for amortization.[13]

■■ The first difficulty with appellants' argument is that there is no evidence in the record showing that such a distribution, whether in fact or even as a matter of accounting in the books of the partnerships, was had. The evidence establishes only that the assets formerly held by the old partnerships eventually found their way into the hands of the new partnerships. Manifestly, this could have been accomplished by purchase and sale, or by distribution in kind and contribution to capital, as appellants assert, or by a mere gift from the old partnerships to the successor partnerships. In the latter event the tax bases of the successor partnerships would be such bases as the assets held in the hands of the donor partnerships,[14] which was zero. The burden of proving the fact of a distribution was on appellants, Interstate Transit Lines v. C. I. R., 1943, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607. This court may not assume in their favor that distributions not revealed by the evidence have taken place.

However, inasmuch as the parties to this appeal have not raised or argued the question of failure of proof we proceed to a consideration of the main contentions made by appellants. It is important to keep in mind that upon the purchase from the estate of the decedent's interests in the old partnerships by appellants, whether as individuals or through the vehicle of the limited partnerships, all persons interested in the limited partnerships which finally resulted were likewise interested in the old partnerships. Each partner's interest in the resulting limited partnerships was in proportion to his interest in the old partnerships directly following the purchase of the decedent's interest. The transactions involved took place only on paper. The business operations of the partnerships continued uninterrupted.

■ In the light of this situation we cannot agree with appellants' attempted application of the provisions of section 113(a) (13), supra and Regulation 118 39.113(a) (13)-2 to the facts of this case. We do not think section 113(a), (13) contemplates assignment of a new basis to partnership properties where no actual distribution of such properties is had and where the partners continue the business in the manner and form theretofore employed.

■ We think the case of Fritz v. C. I. R., 5 Cir., 1935, 76 F.2d 460, has persuasive effect here. That case deals with a situation where a partnership sold its assets to a new firm for a consideration of $70,000. The assets had been held by the old partnership with a tax basis of $180,000. The new partnership was composed of the same membership as the old, except that one partner in the old partnership dropped out and there was some shuffling of the remaining interests. In denying a loss deduction the court held[15] that notwithstanding the fact that under local law the successor partnership

13. Pursuant to sec. 23(1) supra.

14. I.R.C. of 1939, § 113(a) (2).

15. At 76 F.2d 460, 461–462: "Manifestly, for purposes of federal taxation the rules for ascertaining the income and deductions of partnerships ought not to vary with the peculiarities of state laws, but should be uniform throughout the United States. The question whether a transfer of property by a partnership to its members or to a number of them associated in a new partnership realizes a gain or loss to the old firm ought to be answered alike everywhere. We do not think that result necessarily follows from such a transfer even though it accomplishes a technical dissolution of the partnership. Of course two partnerships having one or more common members may coexist, carrying on separate businesses, and may buy from and sell to one another with the usual tax consequences. But when an extraordinary transaction occurs which amounts to a reorganization whereby all assets are transferred to a successor partnership composed of the same individuals, it may easily be that there is no real conversion of the capital. Under the statutes the reorganization of a corporation, though there be a transfer to a new legal entity, often realizes no gain or loss. * * *"

was a separate legal entity, no sale may be recognized for federal tax purposes. Drawing an analogy to the nonrecognition provisions applicable to similar transactions between corporations the court concluded that for purposes of federal taxation the paper transactions there amounted only to the reorganization of an existing partnership.[16] We think the same conclusion is warranted in this case. It is an axiom of tax law that the form of a transaction may not govern its tax consequences where the substance of what was accomplished demands another result.[17]

■ To summarize, we reach the conclusion that inasmuch as the *old* partnerships immediately before the asserted distribution of assets in kind held the subject contracts with a zero basis, the new partnerships, composed of the same persons, holding proportionate interests and operating without interruption the same business enterprises, did not receive new and higher bases for the contracts in issue.[18]

■■ The purchase by appellants of the deceased's interest in the California and Alaska partnerships were purchases of capital assets, Stilgenbaur v. United States, 9 Cir., 1940, 115 F.2d 283, Hatch's Estate v. C. I. R., 9 Cir., 1952, 198 F.2d 26. It has been repeatedly held upon facts similar to those of the instant case that the price paid for a partnership interest is not recoverable from gross income.[19] The partnership could properly claim a depreciation deduction for the exhaustion and wear and tear of property used in the trade or business [20] and, upon a proper showing, for certain contracts purchased by such partnership [21] and while the benefit of such deduction would accrue to the individual partners,[22] the partnership interests may not be said to be property used in the trade or business. The recovery for tax purposes of appellants' expenditure must await the ultimate disposition of the purchased interests.

The judgment is affirmed.

16. Cf. Regulation 118 39.113(2) (13)–2(b) providing: "If a new partner is admitted to the partnership, or an existing partnership is reorganized, the facts as to such change or reorganization should be fully set forth in the next return of income, in order that the Commission may determine whether any gain has been realized or loss sustained by any partner."

The Internal Revenue Code of 1954, § 708, would not recognize gain or loss under the circumstances of this case.

Cf. Flexer Theatres of Miss. v. United States, 6 Cir., 1955, 224 F.2d 445, adopting a position possibly contrary to our holding but without discussion of the point.

17. See e. g. Eisner v. Macomber, 1920, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521; Higgins v. Smith, 1940, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406. Harrison v. Schaffner, 1941, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055.

18. Appellants rely for their contention to the contrary on the holding in Nathan Blum, 5 T.C. 702, 1945. There the taxpayer had bought out the partnership interest of his sole partner and was continuing the business as a *sole proprietorship*. The tax court held that as sole proprietor the taxpayer should allocate his basis for his interests over the various assets held by the business. The present situation is distinguishable, the deceased's interest having been purchased as a means to continuing the business in partnership form.

19. Hill v. C. I. R., 1 Cir., 1930, 38 F.2d 165, Edwards v. C. I. R., 10 Cir., 1939, 102 F.2d 757, Watson v. C. I. R., 7 Cir., 1936, 82 F.2d 345, Autenreith v. C. I. R., 3 Cir., 1940, 115 F.2d 856.

20. See section 23(*l*), supra.

21. Cf. C. I. R. v. Gazette Tel. Co., 10 Cir., 1954, 209 F.2d 926.

22. I.R.C. of 1939, §§ 181–191.