JOHN SUMERS AND MOLLY SUMERS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 66018, 69450, 73169.    Filed May 31, 1961.

*Albert D. Jordan, Esq.*, for the petitioners.
*Herbert Rothenberg, Esq.*, for the respondent.

470

474

TURNER, *Judge:* The petitioner, on brief, concedes that the payments made by him to Fuhrman in the acquisition of his interest in the Fuhrman-Sumers partnership were capital in nature, and did not constitute allowable deductions for the years in which they were made, as he had claimed on his returns. In keeping with allegations contained in his petition, he now contends that his interest in the said partnership is a dissipating asset, all benefits of which will have been exhausted on December 27, 1961, "the day when the partnership lease at the Hospital expires," and having thus a life of 11 years from January 1, 1951, the effective date of his purchase, he is entitled to a depreciation deduction for each of the years herein of one-eleventh of $30,000, or $2,727.27.

Section 23 (1) of the Internal Revenue Code of 1939 and section 167 (a) of the Internal Revenue Code of 1954 provide for the deduction of a "reasonable allowance for the exhaustion, wear and tear * * * (1) of property used in the trade or business, or (2) of property held for the production of income."

After pointing out that the necessity for a depreciation allowance arises from the fact that certain property used in the business or held by the taxpayer for the production of income gradually approaches a point where its usefulness is exhausted, section 39.23 (1)–2 of Regulations 118, relating to taxable years beginning after December 31, 1951, provides that the allowance for depreciation "should be confined to property" of that nature. In section 39.23 (1)–3, it is stated that "Intangibles, the use of which in the trade or business or in the production of income is definitely limited in duration, may be the subject of a depreciation allowance," but that "Intangibles, the use of which in the business or trade or in the production of income is not so limited, will not usually be a proper subject of such an allowance." It is further provided, however, that if "an intangible asset acquired through capital outlay is known from experience to be of value in the business or in the production of income for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance."

Based on the premise that the useful life or existence of the practice of the partnership is limited to the period of its operations at the hospital, it is the position of the petitioner that the life of such practice is contemporaneous with the hospital lease, that the lease expires on December 27, 1961, and upon such expiration "all benefits purchased by petitioner will have been exhaused and petitioner's ability to recoup any portion of his investment will at that time be extinguished," and will be "devoid even of salvage value."

In our opinion, the position of the petitioner is not well taken. In the first place, the hospital lease was not limited to a term expiring on December 27, 1961, as petitioner contends, but was for a fixed term of 21 years from December 27, 1940, "together with an additional term of fifteen (15) years at the option of Sanitarium." In the second place, Sanitarium and Friedland did not limit their agreement to the term of Sanitarium's lease covering the hospital property, but after reciting that the hospital lease was for a fixed term of 21 years, plus an additional 15 years at the option of Sanitarium, Sanitarium represented and warranted to Friedland that it would alter and equip the leased premises for use and occupancy as a private hospital "during the full term of the said lease and any renewal term." Thereafter, in paragraph 2 of the agreement, it was agreed by and between Sanitarium and Friedland that during the term thereof and "any renewal term," Friedland should have "the sole and exclusive right" to render any and all services of every kind, nature, and description customarily performed by a roentgenologist and that Sanitarium would "not maintain or permit to be maintained in the Hospital any radiologic department other than the one to be operated by Dr. Friedland." Furthermore, the right acquired by Friedland was not to be terminated by his illness, incapacity, or death, but was to remain in full force and effect until its expiration, which, as already noted, was for the term of Sanitarium's lease and "any renewal term." Upon the happening of any of the contingencies stated, Friedland, or, in the case of his death, his executors or administrators, had the right to designate the roentgenologist to continue the operation under the terms and conditions set forth in the agreement, subject only to the right of the hospital to approve the roentgenologist so designated. Such was the right to which Fuhrman had succeeded through his purchase from Friedland and of which Sumers had acquired an undivided interest through purchase from Fuhrman. That right was not only a continuing right but an increasingly valuable right, as indicated by the fact that Fuhrman was willing to pay to Friedland therefor the sum of $22,000 and Sumers in 1951 was willing to pay Fuhrman $30,000 for a one-third interest.

It is also significant, we think, that Fuhrman and petitioner, in drawing up the terms of the partnership through which they were to exercise and utilize the exclusive rights which they then owned to carry on a radiologic practice at the hospital, did not limit the life of their partnership to the term of the existing lease of Sanitarium covering the hospital property or even any renewal term thereof, but agreed that the term of the partnership should be until the death of either partner. Furthermore, at the death of either Fuhrman or

Sumers the interest of the deceased partner did not thereby become an exhausted interest but the surviving partner in succeeding to the rights of the deceased partner was required to make payment therefor as specified and agreed to between them in the partnership agreement. They did recognize the possibility that one or the other might desire to withdraw from the arrangement and did make provision therefor, but as in the case of termination of the partnership by the death of one of the partners, the interest of the withdrawing partner was not extinguished by reason of his withdrawal but provision was made whereby the partner succeeding to the rights of the other would make payment therefor according to terms agreed to in advance and contained in the partnership agreement. In short, we find no proper factual basis for a conclusion that petitioner's interest in the practice of the Fuhrman-Sumers partnership was of fixed or limited duration. To the contrary, its life was continuing and indefinite and patently it was not exhausted by being exercised.

Petitioner cites and relies on *C. E. Silling, Sr.*, 27 T.C. 701; *Peter P. Risko*, 26 T.C. 485; *Eleanor S. Howell*, 24 T.C. 342; *Raymond S. Wilkins*, 7 T.C. 519, affd. 161 F. 2d 830; *Flynn, Harrison & Conroy, Inc.*, 21 B.T.A. 285. The *Silling*, *Risko*, *Howell*, and *Wilkins* cases did involve partnership interests, but the facts and circumstances in each were such that the partnership interests were definitely limited in duration or the duration could be estimated from experience with reasonable certainty and at termination would be devoid of substance. Furthermore, in the *Silling* case, we pointed out that "The general rule is that a partnership interest is a capital asset and its purchase price is not recoverable from gross income. * * * It is regarded as having an indefinite life and the recovery of its basis must await its ultimate disposition." The facts in the instant case bring it within the general rule and not within any of the exceptions thereto. Petitioner's partnership interest was of indefinite duration and it cannot be considered a wasting or depreciable asset. Recovery of his capital outlay must await the ultimate disposition of his partnership interest. *Anderson* v. *United States*, 232 F. 2d 794; *Watson* v. *Commissioner*, 82 F. 2d 345, affirming a Memorandum Opinion of this Court.

The *Flynn* case involved a contract which had a fixed term, and we held that the taxpayer was entitled to exhaust the cost of the contract over its remaining useful life. Since petitioner's partnership interest was of indefinite duration, the *Flynn* case is inapposite.

*Decisions will be entered for the respondent.*