H. N. MILLER et al.
v.
The UNITED STATES.
No. 212–59.

United States Court of Claims.
May 15, 1964.

Morgan Hunter, Austin, Tex., for plaintiffs. Powell, Rauhut, McGinnis, Reavley & Lochridge, Austin, Tex., were on the briefs.

Joseph P. Spellman, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. Edward S. Smith, Lyle M. Turner, and Philip R. Miller, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

PER CURIAM.

This case was referred pursuant to Rule 45 (since April 1, 1964, Rule 57) to Wilson Cowen, a trial commissioner of this court, with directions to make findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed April 26, 1962. Exceptions to the commissioner's report and briefs were filed by both parties and the case was submitted to the court on oral argument of counsel. Plaintiff filed a post argument submission to which defendant filed an opposi-

-tion. Upon consideration thereof, since the court is in agreement with the findings and recommendations of the trial ·commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiffs are therefore entitled to recover and judgment is entered for them with the amounts of recovery to be determined pursuant to Rule 47(c) (2).

## OPINION OF COMMISSIONER

This suit was brought by the plaintiffs to recover Federal income taxes paid by them for the calendar year 1955. Two of the plaintiffs also seek to recover taxes paid with respect to the calendar years 1953, 1954, and 1956. The amounts claimed by each plaintiff for the years stated are set forth in finding 2.

Austin Mutual Life Insurance Company (hereinafter called Austin Mutual) was organized in 1921 and under applicable Texas statutes was authorized to issue ordinary mutual assessment life insurance policies up to a maximum amount of $5,000 for each person insured.

Austin Mutual Insurance Agency (hereinafter called Agency Partnership) was a partnership which at relevant times was composed of plaintiffs H. N. Miller, Roy Frank Varnado, Margie Nell Buell, Ray E. Lee, John Earle Neff, Jr., Ben H. Powell, and two other individuals not parties to this action.[1] The interest of each partner as of March 30, 1955, is detailed in finding 10.

The sole asset of Agency Partnership, aside from certain physical assets such as desks, chairs, etc., was a management contract with Austin Mutual. Pursuant to the bylaws of Austin Mutual, a portion of the premiums collected from the policyholders of Austin Mutual, known as the general or expense fund, were paid to and became property of the partners of Agency Partnership in consideration of their operating the business of Austin Mutual in accordance with the terms of the management contract, and this provided the partnership with its only source of income. Under the constitution and bylaws of Austin Mutual its officers, all partners of Agency Partnership, were to have complete charge of the management and control of the company and had life tenure. During the years prior to September 30, 1954, Agency Partnership's bylaw arrangement with Austin Mutual was very profitable as attested by the amounts plaintiffs paid for their respective interests in the Agency Partnership, despite the fact that the book value of the partnership assets was far less than each plaintiff paid for his interest.

Austin Life Insurance Company (hereinafter called Austin Life) is the third business organization involved in this case. It was and is a legal reserve stock life insurance corporation authorized to issue life, health, and accident insurance, and was organized under the laws of Texas in 1946 by the same persons who were the manager of Austin Mutual and partners of Agency Partnership. F. W. Woolsey, not a party to this action, became controlling stockholder of Austin Life upon its incorporation and it was he who determined the composition of the remaining stockholders. The other partners of Agency Partnership also acquired interests in Austin Life, their holdings being substantially but not exactly proportional to their participation in the partnership. There was no instance in which anyone ever acquired or disposed of an interest in Agency Partnership without simultaneously acquiring or disposing of an interest in Austin Life.

During the years in which Austin Mutual, Agency Partnership and Austin Life were in existence concurrently, they all used the same office, all had the same employees, all used the same furniture, fixtures and office equipment, and all had the same management. Title to the furniture, fixtures and equipment was held by Agency Partnership. Subsequent to its incorporation, the officers of Austin Life were substantially the same persons as officers in Austin Mutual. Because

---

1. The plaintiff partners owned an aggregate of 41⅓ percent of the interests in the firm. See finding 10.

few policyholders of Austin Mutual ever attended the annual membership meetings, there was no instance in which any management decision of the company was initiated by anyone other than the managers.

With improved economic conditions during and particularly after World War II, Austin Mutual found it difficult to sell new policies because people preferred legal reserve life insurance. Also, by 1946 the average age of its policyholders was high and rising. During the early 1940's, one of its employees made calculations showing that the mortuary fund would be insufficient to meet expected death claims within 15 years thereafter. In mid-1950, a consulting actuary confirmed the inadequacy of the mortuary fund to meet anticipated death claims and recommended that Austin Mutual's policies be converted to legal reserve term life insurance. The alternatives to this course of action were (1) to make additional assessments against policyholders to pay death claims arising in the future or (2) to continue to operate the company as in the past and permit it to become formally insolvent in a period of 10 or 15 years. The first of these alternatives was unacceptable to the management, because it was feared that increased assessments would drive the better-risk policyholders to other companies and thus worsen the financial condition of Austin Mutual, and the second alternative was equally unacceptable because it was felt that such a course of action would be harmful to the business of Austin Life.

Therefore, on July 29, 1954, the board of directors of Austin Mutual adopted a plan for converting the mutual assessment policies into legal reserve term life insurance policies to be issued in the form of certificates of assumption by Austin Life. This action was taken in spite of disagreement voiced by some members of Agency Partnership as late as the spring of 1954. The conditions under which the mutual assessment life insurance policies could be converted to legal reserve life insurance were regulated by Texas law, and the following steps were taken in compliance with the Insurance Code of Texas: [2]

(1) Before it was submitted to the membership, the plan had to receive the approval of the State Board of Insurance Commissioners, and such approval was given on July 29, 1954;

(2) written notice, including a copy of the proposed plan, was given to the policyholders for the required period in advance of a meeting held on September 30, 1954;

(3) the plan was ratified by a majority of the votes cast by the policyholders at the meeting. Members could vote in person, by mail or by proxy, and out of about 15,000 policyholders, 2,044 voted by mail, 2,168 cast votes by proxy, and 25 voted in person. The plan was approved by a vote of 3,945 to 292;

(4) after the results of the policyholders' meeting were certified to the Board of Insurance Commissioners, the board approved the reinsurance plan on November 29, 1954, finding that it complied with the Insurance Code of Texas.

Effective as of October 1, 1954, the mortuary fund of Austin Mutual was transferred to and became the property of Austin Life, which issued certificates of assumption, providing the former policyholders of Austin Mutual legal reserve term life insurance policies in lieu of the mutual assessment policies; premiums were payable at the same rates as stipulated in the old policies.

No former policyholder was required to accept a certificate of assumption. Instead he had the right to return it within 60 days and receive a cash payment equal to his proportionate share of the mortuary fund of Austin Mutual.

Because of the deficiency in the mortuary fund transferred to it from Austin Mutual, Austin Life was required to add about $10,000 out of its surplus to the

---

2. Art. 14.61 § 1 (a), Vernon's Texas Statutes (1951).

legal reserves for the certificates of assumption.

On December 31, 1954, the furniture, fixtures, and office equipment previously used by the three business concerns were sold for cash by Agency Partnership to Austin Life at the depreciated book value of $18,209.74, an amount which was somewhat larger than the market value of the property. No other assets or property of Agency Partnership were sold or transferred to Austin Life.

On March 31, 1955, Agency Partnership was formally dissolved, and its remaining assets, consisting of cash, were distributed pro rata to the partners. As shown in finding 34, each of the plaintiffs received less than the amount he had paid for his share in the partnership.

Agency Partnership kept its books and filed its income tax returns on fiscal years beginning April 1 and ending March 31. Since the partnership's fiscal year began before December 31, 1954, the provisions of the 1939 Internal Revenue Code are applicable for the determination of plaintiffs' gain or loss. The pertinent provision is 26 U.S.C. (I.R.C. 1939) § 113(a) (13) (1952 Ed.) and Treasury Regulation 118, § 39.113(a) (13)–2, which was issued pursuant thereto and provided as follows:

> "READJUSTMENT OF PARTNERSHIP INTERESTS. (a) When a partner retires from a partnership, or the partnership is dissolved, the partner realizes a gain or loss measured by the difference between the price received for his interest and the sum of the adjusted cost or other basis to him of his interest in the partnership plus the amount of his share in any undisputed partnership net income earned since he became a partner on which the income tax has been paid. * * *"

The losses sustained by plaintiffs, computed in accordance with the applicable statutes and regulation, are shown in finding 34.

Conceding that the 1939 code applies for the purpose stated above, defendant has urged three separate defenses as a bar to plaintiffs' recovery herein.

As its first and principal defense, defendant asserts that Agency Partnership dominated and controlled Austin Mutual; that by the simple expedient of amending the bylaws of Austin Mutual, plaintiffs indirectly transferred to Austin Life an income-producing asset—the right to participate in the premiums formerly paid to Austin Mutual; that Austin Life was also controlled by plaintiffs, and that since plaintiffs merely shifted their investment in the partnership from one pocket to another, they sustained no loss. Defendant relies on such cases as Fritz v. Commissioner, 76 F.2d 460, Anderson v. United States, 9 Cir., 232 F.2d 794, and similar cases which deal generally with situations in which the members of a partnership purported to sell partnership assets at a loss to a successor business organization in which they had similar but not necessarily identical ownership.

The weakness in defendant's argument is that it ignores too many of the controlling facts. Plaintiffs did not control but they owned interests in Austin Life which were substantially proportionate to their interests in Agency Partnership; the partnership's only asset that produced income was its management contract with Austin Mutual; the partnership, in which plaintiffs did not own a controlling interest, directed the day-to-day operations of Austin Mutual, and the partners, as officers of Austin Mutual, initiated the plan for converting the mutual assessment policies to legal reserve term life policies to be issued by Austin Life. However, with the exception of the furniture sold by the partnership to Austin Life, plaintiffs did not, either as officers of Austin Mutual or as members of Agency Partnership, transfer or sell any assets or property, directly or indirectly, to Austin Life. The complex transaction by which the mutual assessment policies were converted was accomplished in compliance with the Insurance Code of the State of Texas and under

the supervision of the State Board of Insurance Commissioners. The inescapable fact is that the reinsurance plan would not and could not have been adopted except for the favorable vote of the policyholders of Austin Mutual. There is no suggestion in the record, much less any tangible evidence, that the plaintiffs influenced or controlled the votes of the policyholders. It was their action rather than that of plaintiffs or of the partnership which effected the transfer of Austin Mutual's assets to Austin Life.

When the reinsurance agreement was ratified by the policyholders and approved by the State Board of Insurance Commissioners, the management contract with Austin Mutual was not transferred to Austin Life. Instead, its value was reduced to zero, because the partnership's sole source of income was eliminated. It is the loss of that intangible asset which is the root of this law suit.

■ With reference to taxable transactions involving related taxpayers, this court in Long Corp. v. United States, 156 Ct.Cl. 197, 203, 298 F.2d 450, 453, stated:

"In determining whether or not the form used was one of substance, and not a sham, this court has closely scrutinized those transactions in which a common ownership factor was present. Our approach has been to ascertain whether the transaction was 'one that could have reasonably been made between parties dealing at arm's length,' and if it were, a business loss would be deductible. George E. Warren Corp. v. United

States, 141 F.Supp. 935, 135 Ct.Cl. 305, 312 (1956)."

■ Tested by that standard, the plaintiffs have demonstrated by undisputed evidence that they sustained a bona fide loss and that their participation in the events which culminated in the issuance of the certificates of assumption by Austin Life may not be equated to the simulated transactions at issue in the cases cited by defendant.

■ For its second defense, the defendant contends that the losses claimed by plaintiffs may not be recognized because of the provisions of section 351(a) of the 1954 code, 26 U.S.C. (I.R.C.1954) § 351(a) (1958 Ed.).[3]

As pointed out above, the only property transferred by Agency Partnership to Austin Life was the office equipment sold to Austin Life at a price somewhat above market value. No loss was sustained and none is claimed by reason of the sale of that property; the transaction has no bearing on the issues here.

It is too clear for argument that section 351(a) has no application to the facts of this case, for the plain requirements of that statute are not met. No property was transferred by Agency Partnership or by plaintiffs to Austin Life solely in exchange for stock or securities.

■ In its third defense, defendant contends that the losses claimed by plaintiff resulted from the sale or exchange of property between related taxpayers and, as such, must be disallowed under the provisions of 26 U.S.C. (I.R.C.1954) § 267 (1958 Ed.).[4]

3. § 351(a) provides:
   "§ 351. Transfer to corporation controlled by transferor
   "(a) General rule.—
   "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for

services shall not be considered as issued in return for property."

4. § 267 provides in pertinent part:
   "(a) Deductions disallowed.—
   "No deduction shall be allowed—
   "(1) Losses.
   "In respect of losses from sales or exchanges of property * * * directly or indirectly, between persons specified within any one of the paragraphs of subsection (b). * * *

Much of what has been said above in respect to defendant's principal defense demonstrates the inapplicability of section 267 because no loss arose nor is any claimed as a result of any sale or exchange of property from plaintiffs to Austin Life. Aside from the immaterial sale of the office equipment at a price above market value, neither plaintiffs nor the partnership sold to or exchanged any property with Austin Life. The management contract was never transferred to Austin Life. Except for the office equipment, the only transfer of property to the corporation (Austin Life), i. e., the right to collect premiums from the policyholders and the mortuary fund of Austin Mutual, was accomplished by the vote of the policyholders pursuant to applicable Texas law. In fact, any property thus transferred was done by each policyholder at his own option, since each had the right to reject the certificates of assumption and withdraw his portion of the mortuary fund.

Thus, the essential elements of a "sale or exchange"—a transfer of property by the taxpayer to the transferee and consideration in cash or in kind moving from the transferee to the taxpayer [5]—are totally lacking in this instance and, in their absence, section 267 can have no application.

The final question to be decided is whether the full amount of the losses incurred by plaintiffs may be deducted as ordinary losses, as plaintiffs contend, or whether they are to be treated as capital losses, as defendant contends. Plaintiffs agree that it is now well established that an interest in a partnership is a capital asset. Commissioner v. Smith, 5 Cir., 173 F.2d 470; Long v. Commissioner, 5

Cir., 173 F.2d 471. Plaintiffs also admit that when a partner retires from a continuing partnership and takes out his share in cash, a sale or exchange of his partnership interest occurs. Smith v. Commissioner, 5 T.C. 323. However, plaintiffs insist that since the 1939 code contained no provision that liquidations of partnership should be treated as sales or exchanges of partnership interests and that since the asset which produced the loss involved herein was never sold or exchanged, their losses should be treated as ordinary losses.

Defendant calls attention to Ad. Auriema, Inc. v. Commissioner, 8 T.C.M. 778, a memorandum decision of the Tax Court, decided December 7, 1943. This is the only case directly in point cited by either party and specifically covers the treatment of a loss in a partnership interest upon the voluntary liquidation of an entire partnership. There the court stated that a partnership interest is a capital asset and that since the loss claimed did not fall within any of the excluded categories of "property held" as defined in 26 U.S.C. (I.R.C.1939) § 117 (1952 Ed.), the loss was a capital loss.

Although there appears to be a paucity of decisions on the precise question, there are other authorities which treat losses resulting from distributions upon the liquidation of partnerships in the same way. 6 Mertens, Law of Federal Income Taxation, Section 35.54 states:

> "§ 35.54. DISTRIBUTIONS IN LIQUIDATION OF PARTNERSHIP OR PARTNER'S INTEREST. The tax consequences with respect to a partner who, along with the other members of the firm, receives a distribution of money or

---

"(b) Relationships.—The persons referred to in subsection (a) are:
    "(1) * * *
    "(2) An individual and a corporation more than 50 percent in value of the out-

standing stock of which is owned, directly or indirectly, by or for such individual.

5. 53 Columbia Law Review 976.

property, or a combination of the two, upon the liquidation of the partnership business are essentially the same as in the case of a similar distribution to a retiring member of a continuing partnership.
\* \* \*

\*    \*    \*    \*    \*    \*

"When a partner receives a distribution of cash, either as his share of the proceeds of a liquidated partnership business, or in settlement of his interest upon his retirement from a continuing partnership, he realizes gain or loss in the difference between the amount received and the adjusted cost of his partnership interest increased by the amount of his share of any undistributed partnership net earnings since he became a partner."

Also, Rev.Rul. 56–5, 1956–1 Cum.Bull. 630, states in part:

"The disposition of a partnership interest, even though it be by liquidation thereof, is a capital transaction. Any gain or loss realized upon the partial or complete liquidation of a partnership interest is capital in nature."

It should also be pointed out that Treasury Regulation 118, Sec. 39.113(a) (13)–2(a), upon which plaintiffs rely, utilizes the same standard for determining the realized gain or loss to a partner upon the dissolution of a partnership as is applied when a partner retires from a continuing partnership.

Accordingly, it is concluded that defendant's contention is supported by the weight of authority and that the losses realized by plaintiffs were capital losses.

For the reasons and upon the basis stated in the foregoing opinion, plaintiffs are entitled to recover. The amounts to be recovered are to be determined pursuant to Rule 38(c).\*